EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel A. Jusino González<br><br>Recurrido<br><br>v.<br><br>Leiza Lee Norat Santiago<br><br>Peticionaria | Certiorari<br><br>2023 TSPR 47<br><br>211 DPR ___ |

Número del Caso: CC-2023-0080

Fecha: 13 de abril de 2023

Tribunal de Apelaciones:

Panel Especial

Abogada de la parte peticionaria:

Lcda. Ileana Rivera Torres

Abogada de la parte recurrida:

Lcda. Edna I. Santiago Pérez

Materia: Derecho de Familia – Ante una solicitud de traslado de un menor, el tribunal debe contar con los elementos necesarios para llegar a una determinación que salvaguarde el mejor interés y bienestar del menor. Esto, a la luz de los criterios estatuidos en la Ley de la Guía Uniforme para Casos de Relocalización del Padre Custodio.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel A. Jusino González

    Recurrido

        v.               CC-2023-0080        Certiorari

Leiza Lee Norat Santiago

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

(Regla 50)

En San Juan, Puerto Rico, a 13 de abril de 2023.

En esta ocasión precisamos que ante una solicitud de traslado es fundamental que el tribunal cuente con los elementos necesarios para salvaguardar el mejor interés y bienestar del menor. Esto, a la luz de los criterios de la *Ley de la Guía Uniforme para Casos de Relocalización del Padre Custodio*, *infra*.

I

El caso ante nuestra consideración se originó, el 29 de agosto de 2018, cuando el Sr. Manuel A. Jusino González (recurrido) presentó una demanda en contra de la Sra. Leiza Lee Norat Santiago (peticionaria) sobre la custodia compartida del menor procreado por ambos. Por su parte, el 31 de agosto de 2018, la peticionaria

presentó una demanda sobre relaciones paternofiliales y alimentos en contra del recurrido.

Luego de varios trámites procesales, el 11 de julio de 2019, la peticionaria presentó una *Moción informando solicitud de relocalización* a Orlando, Florida.[1] En resumen, la peticionaria informó y detalló que tiene una oferta atractiva de empleo para desempeñarse como enfermera anestesista en un grupo particular de anestesiólogos. También, anunció varios lugares potenciales de vivienda y de cuidos educativos. Con respecto a las relaciones paternofiliales, la peticionaria indicó que estaba en la mejor disposición de viajar por lo menos una vez al mes con el menor a Puerto Rico para que se pudiera relacionar con el recurrido y que estaba dispuesta a trabajar un plan para las navidades y el verano.

Ante tal solicitud, el Tribunal de Primera Instancia le ordenó a la peticionaria que informara quién fungiría como perito para que este realizara el Informe Interagencial correspondiente. Luego, el 22 de noviembre de 2019 la peticionaria presentó el Informe Interagencial realizado por el Dr. Larry E. Alicea Rodríguez. Por su parte, el trabajador social a cargo del caso rindió un Informe Social sin recomendaciones.

Posteriormente, el Tribunal de Primera Instancia emitió una *Resolución y Orden* en la que paralizó el asunto

---

[1] *Moción informando solicitud de relocalización*, Apéndice del recurso de *certiorari*, pág. 47.

del traslado hasta tanto se adjudicara una orden de protección bajo la Ley Núm. 246-2011 en contra del recurrido y a favor del menor por alegado abuso sexual y hasta que culminara la investigación en el Departamento de la Familia y la Policía de Puerto Rico. En ese entonces, quedaba pendiente que se rindieran los informes sobre la procedencia del traslado.

Inconforme, la peticionaria acudió al Tribunal de Apelaciones y luego ante este Foro mediante una *Petición de certiorari* y *Auxilio de Jurisdicción* (CC-2021-0493). En esa ocasión, la peticionaria nos solicitó que interviniéramos para acelerar la adjudicación de la solicitud de traslado. El 4 de agosto de 2021, la Sala de Verano I denegó ambos escritos. No obstante, exhortó a la Unidad Social de Relaciones de Familia a que emitiera el Informe Final a la brevedad posible.[2] Luego, la Sala de Verano II atendió la *Moción de reconsideración* y mantuvo la denegatoria, pero también exhortó a la Unidad Social de Relaciones de Familia a que emitiera ante el Tribunal de Primera Instancia el Informe Social, sin mayor dilación.

Al mes siguiente de nuestra denegatoria y exhortación, el trabajador social a cargo del caso, el Sr. Rolando Santiago González, le solicitó al Tribunal de Primera Instancia que lo relevara del caso por un alegado conflicto ético. A este petitorio, el foro de instancia

---

[2] Resolución de 4 de agosto de 2021, Apéndice de la *Petición de certiorari*, pág. 46.

proveyó de conformidad y, consecuentemente, asignó a la Sra. Valerie Amaro García, quien pidió tiempo adicional para rendir el Informe Social correspondiente. Luego de varias solicitudes por parte de la peticionaria para que se rindiera el Informe Social, el 22 de febrero de 2022 la Trabajadora Social lo rindió sin determinaciones sobre el asunto de la relocalización. Esto, pues la Trabajadora Social concluyó que no estaba en posición de emitir recomendaciones al respecto, hasta tanto se completara el proceso de investigación por parte del Centro de Investigación con Menores Víctimas de Abuso Sexual.[3]

A causa del tiempo trascurrido (más de 3 años) y de no contar todavía con un Informe Social, la peticionaria le solicitó al Tribunal de Primera Instancia que le informara si era necesaria una actualización del Informe Interagencial. En respuesta, el 18 de julio de 2022, el Tribunal de Primera Instancia le ordenó a la Trabajadora Social que informara si le era necesaria una actualización del Informe Interagencial. La Trabajadora Social informó que debido al tiempo transcurrido consideraba pertinente que se actualizara el aspecto de la vivienda.[4] En consecuencia, el 2 de agosto de 2022, el Tribunal de Primera Instancia ordenó que se actualizara el aspecto de

---

[3] Surge del expediente que la investigación concluyó y que la Trabajadora Social tiene acceso al Informe correspondiente. *Moción Informativa*, Apéndice de la *Petición de certiorari*, pág. 960.

[4] *Moción Informativa sobre varios asuntos*, Apéndice de la *Petición de certiorari*, pág. 972.

la vivienda en el Informe Interagencial.[5] En particular, el Referido Interagencial para actualizar la información del hogar de la peticionaria y así completar los asuntos de custodia y reevaluación sobre relocalización (estudio actualizado) especifica que se requiere la información siguiente: miembros de la familia, estado civil, edad, estudios, ingresos, condiciones sociales del hogar, opinión de los vecinos, entorno comunitario, posición del cliente para la petición, condiciones del niño, salud, escuela y preferencias, posición del cliente sobre la custodia y los planes para el niño (niños), récord policial, evaluación del trabajador social y cualquier otra información que considere conveniente.[6]

Así las cosas, la peticionaria contrató al Sr. José Galarza para realizar la actualización porque el doctor Alicea Rodríguez no estaba disponible para viajar y realizar el estudio. El 13 de septiembre de 2022, el Tribunal de Primera Instancia emitió una Resolución en la que autorizó al señor Galarza como encargado de actualizar el Informe Interagencial.[7] De conformidad con lo anterior, la peticionaria presentó el Informe Interagencial actualizado.

---

[5] *Resolución y orden*, Apéndice de la *Petición de certiorari,* pág. 977.

[6] *Referido Interagencial*, Apéndice de la Petición de certiorari, págs. 1044-1046.

[7] *Resolución*, Apéndice de la Petición de certiorari, pág. 988.

Sin embargo, el recurrido se opuso y alegó que la actualización del Informe Interagencial contemplaba asuntos adicionales a los solicitados por la Trabajadora Social y que, además, se sustituiría el perito, lo que conllevaría un nuevo informe de refutación y toma de deposiciones a este. El 21 de octubre de 2022, el Tribunal de Primera Instancia emitió una Resolución y dispuso -sin más- lo siguiente: "se ordena el desglose del informe sometido por la [peticionaria]. No se permitirá la utilización del mismo".[8] Posteriormente, la peticionaria presentó una *Moción informativa* en la que anunció prueba testifical. A esta solicitud, el Tribunal de Primera Instancia proveyó "no ha lugar".[9]

Inconforme, la peticionaria acudió ante el Tribunal de Apelaciones mediante la presentación de un recurso de *certiorari* y señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al violar la ley del caso, al haber autorizado la actualización del Informe Interagencial para luego indicar que no se permitía tal cosa y ordenar su desglose en detrimento del debido proceso de ley.

> Erró el Tribunal de Primera Instancia al declarar no ha lugar una Moción Informativa en la que se anuncia prueba testifical, a pesar de que este caso aún no cuenta con un cierre al descubrimiento de prueba, a pesar de que este caso no cuenta con un Informe de Conferencia Final coartando el derecho de presentación de prueba de la compareciente.

---

[8] *Resolución y orden*, Apéndice de la *Petición de certiorari,* pág. 1,326.

[9] *Resolución y orden*, Apéndice de la *Petición de certiorari,* págs. 1,343-1,344.

El Tribunal de Apelaciones emitió una Resolución en la que denegó la expedición del recurso de *certiorari*, al concluir que no se cumplían con los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

En desacuerdo, la peticionaria comparece ante este Foro mediante un recurso de *certiorari* y señala lo siguiente:

> Erró el tribunal de apelaciones al negarse a expedir el recurso de *certiorari,* a pesar de que el TPI viola la ley del caso, al haber autorizado la actualización de Informe Interagencial para luego indicar que no permitía tal cosa y ordenar su desglose en detrimento del debido proceso de ley.

> Erró el tribunal de apelaciones al negarse a expedir el recurso de *certiorari,* a pesar de que el TPI declaró no ha lugar una moción informativa en la que se anuncia prueba testifical, aun cuando este caso todavía no cuenta con un cierre al descubrimiento de prueba; a pesar que este caso no cuenta con un Informe Social Final, ni con un Informe de Conferencia Final, coartando el derecho de presentación de prueba de la compareciente, siendo ello un error de derecho y otras consideraciones adicionales al amparo de la Regla 40 del Tribunal de Apelaciones y 30 de este honorable Tribunal.

> Erró el Tribunal de Apelaciones al negarse a conceder la Moción en Auxilio de Jurisdicción tras reconocer la TS que la actualización del Informe cuyo acceso fuera negado por el TPI, luego de haberlo autorizado en un principio, era importante para su Informe, siendo este asunto aquel que contemplaba el recurso de *certiorari* ante su consideración.

Además de la Petición de *certiorari*, la peticionaria presentó una moción titulada *Auxilio de jurisdicción*. Así

las cosas, le ordenamos al recurrido a comparecer y mostrar causa por la cual no debíamos revocar a los foros *a quo.*

En cumplimiento de orden, comparece el recurrido y alega que en agosto de 2019 el tribunal concedió la custodia compartida a ambos padres[10] y que, consecuentemente, la solicitud de relocalización conlleva que se adjudique la custodia exclusiva del menor al padre o la madre. Reitera que el informe actualizado contempla asuntos adicionales a los solicitados por la Trabajadora Social e inicialmente permitidos por el tribunal y que incluye recomendaciones de custodia. Añade que se tendría que reabrir el descubrimiento de prueba, incluyendo la toma de deposiciones a los testigos y un nuevo informe de refutación y que esto ocasionaría una dilación indeseable.

Con el beneficio de la comparecencia de las partes, resolvemos, no sin antes exponer el marco jurídico.

## II

La patria potestad se define como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación.[11] A su vez, la custodia es un componente de la patria potestad porque impone a los padres el deber primario

---

[10] Destacamos que en agosto de 2019 el Tribunal de Primera Instancia no adjudicó la custodia como tal, sino que resolvió que en ese momento las partes ostentarían custodia compartida provisional. Véase *Minuta*, Apéndice del recurso de *certiorari*, pág. 193.

[11] Art. 589 del Código Civil, 31 LPRA sec. 7241.

de tener a sus hijos no emancipados bajo su compañía.[12] Entiéndase que, es la tenencia o control físico que tiene un progenitor sobre los hijos.[13]

En particular, la custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.[14] De otra parte, la custodia exclusiva se refiere a cuando esta se asigna a un solo progenitor. En específico:

> La custodia del hijo, acompañada o no del ejercicio exclusivo de la patria potestad, puede asignarse a un solo progenitor:
> (a) mientras se ventila el proceso de divorcio o de nulidad del matrimonio;
> (b) luego de decretada la disolución o anulado el matrimonio; o
> (c) cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo.
>
> En estos casos no puede entorpecerse o prohibirse el contacto del otro progenitor con su hijo, aunque puede regularse en las circunstancias y del modo que autoriza este Código.[15]

Ante una determinación sobre custodia, los tribunales están llamados a utilizar como criterio rector el bienestar

---

[12] *Ex parte Torres Ojeda*, 118 DPR 469, 476 (1987).

[13] Íd., pág. 477.

[14] Art. 602 del Código Civil, 31 LPRA sec. 7281. Véase, además, la *Ley Protectora de los derechos de los menores en el proceso de adjudicación de custodia*, Ley Núm. 223-2011.

[15] Art. 606 del Código Civil 31 LPRA sec. 7285.

y los mejores intereses del menor.[16] Entiéndase que la decisión del tribunal relativa a la custodia de un menor es una a la que se debe llegar luego de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, teniendo como único y principal objetivo el bienestar de los menores.[17]

Asimismo, sobre los criterios a considerar en toda determinación de custodia, el Código Civil establece los siguientes:

> (a) la salud mental de ambos progenitores y de los hijos;
> (b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;
> (c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;
> (d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;
> (e) el historial de cada progenitor en la relación con sus hijos;
> (f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;
> (g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;
> (h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;
> (i) la razón o los motivos de los progenitores para solicitar la custodia compartida;
> (j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;
> (k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;
> (l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y
> (m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos.[18]

---

[16] *Muñoz Sánchez v. Báez De Jesús*, 195 DPR 645, 651 (2016).

[17] *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005).

[18] Art. 604 del Código Civil, 31 LPRA sec. 7283.

Además, hemos señalado que:

> Conforme a las prerrogativas que derivan del poder de *parens patriae* del Estado, un tribunal puede ordenar la comparecencia de todas las personas que puedan ayudar a determinar la mejor manera de proteger el bienestar del menor. Esta responsabilidad incluye, a su vez, la potestad de ordenar las investigaciones de índole social que el tribunal entienda procedentes. A esos efectos, las Unidades Sociales de Relaciones de Familia y Asuntos de Menores tienen como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración.[19]

Nótese que, al dilucidar un cambio de custodia de un menor, el foro judicial debe contar con la información más completa y variada que sea posible de modo que pueda resolver acorde.[20]

A su vez, las determinaciones de custodia no constituyen propiamente cosa juzgada, debido a que están sujetas a revisión judicial de ocurrir un cambio en las circunstancias, siempre que se considere el mejor interés y bienestar del menor.[21] Así, las determinaciones de custodia no son estrictamente finales ni definitivas ya que pueden surgir hechos y circunstancias posteriores al dictamen previo que requieran que se modifique.[22]

Por otro lado, la *Ley de la Guía Uniforme para Casos de Relocalización del Padre Custodio*, Ley Núm. 102-2018, 32

---

[19] *Muñoz Sánchez v. Báez de Jesús*, *supra*, pág. 652.

[20] *Peña v. Peña*, 164 DPR 949, 959 (2005).

[21] *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998).

[22] Íd., pág. 129.

LPRA secs. 3371 *et seq.* busca salvaguardar el principio que rige los asuntos de menores, esto es: el mejor bienestar del menor.[23] En específico, el Art.6 de la Ley Núm. 102-2018, 32 LPRA sec. 3376, establece los factores a considerar para salvaguardar el mejor bienestar del menor, a saber:

1. Preferencia del menor en aquellos casos donde tenga derecho a ser oído;
2. Relación del menor con el padre no custodio;
3. Relación del menor con las personas interesadas y la forma en que éstos llevan a cabo su derecho de visita;
4. Periodo de tiempo que el menor lleva residiendo en la residencia principal y los lazos emocionales que lo une a ella;
5. Oportunidades de desarrollo, tanto emocional, como físico y educacional;
6. Impacto que tendrá el traslado en su desarrollo;
7. Disposición del padre custodio o tutor de permitir al otro padre no custodio o persona interesada de ejercer su derecho a visita, relacionarse con el menor y custodia compartida en los casos que aplique;
8. Potencial de cambio en la vida del padre custodio o tutor y del menor;
9. Posibilidad económica del padre no custodio o persona interesada de ejercer su derecho a visita para relacionarse con el menor;
10. Grado de responsabilidad del padre no custodio o persona interesada en sus obligaciones para con el menor;
11. El Tribunal podrá ordenar el realizar un estudio social del área al cual planean mudar al menor. Este estudio, entre otras cosas, deberá incluir un análisis de la criminalidad del área interesada;
12. Lugar donde el menor va a estudiar, nombre e información completa de la escuela: dirección, teléfono, maestro del menor y nombre del director;
13. En caso de que el menor no tenga edad suficiente para asistir a la escuela, nombre del cuido e información completa en el que estará el menor o en caso de que sea una persona particular información completa de la misma;

---

[23] Exposición de Motivos de la Ley Núm. 102-2018.

14. Lugar de trabajo, nombre e información general del padre custodio o tutor legal: teléfono, dirección y nombre del patrono;
15. Información de las personas adicionales al padre custodio o tutor legal con las que vivirá el menor, de ser el caso;
16. Información del casero en los casos donde la residencia sea alquilada;
17. Certificación de empleo o estudios;
18. Se observará la recomendación del trabajador social en cuanto al efecto que esto tendrá en el menor;
19. El seguro médico que tendrá el menor; y
20. Cualquier otro factor que el juzgador entienda necesario, tomando como principio la equidad entre las partes.

A su vez, el citado artículo establece que se permitirá la relocalización del menor si se prueba que: (1) no es para impedir la relación del padre no custodio o persona interesada con el menor; (2) existe una razón válida y determinante para relocalizarse y (3) ofrecerá una mejor oportunidad de vida tanto para el padre custodio o tutor como para el menor.

III

Como mencionáramos, precisamos sobre la importancia de que el tribunal a cargo de una solicitud de traslado de un menor cuente con los elementos necesarios para llegar a una determinación que salvaguarde el mejor interés y bienestar de este. Ello, nos lleva a concluir que el Informe Interagencial en cuestión debe estar actualizado. Veamos.

De entrada, debemos señalar que los asuntos de custodia y la determinación de permitir o denegar el traslado de un menor debe hacerse con extremo cuidado porque esas determinaciones "tiene[n] como norte brindar certeza

y estabilidad al entorno familiar de un menor de edad".[24] No obstante, vemos que el Tribunal de Primera Instancia revirtió su determinación inicial que permitía la actualización del Informe Interagencial y, además, denegó que la peticionaria presentara varios testigos, entre ellos el perito que actualizó el Informe Interagencial.[25] Ello, sin duda trastoca la protección del mejor interés y bienestar del menor, toda vez que el tribunal debe contar con todos los elementos actuales para estar en posición de resolver.

Lo anterior se torna aún más evidente cuando vemos que, al momento de solicitar el traslado, el menor tenía dos años, mientras que en la actualidad tiene seis. **Así, el mero sentido común nos conmina a concluir que las realidades y necesidades de un párvulo de apenas dos años tienen que ser muy distintas a las de un niño de seis.** Por ejemplo, a los dos años el menor iba a un cuido escolar mientras que ahora asistiría a una escuela regular. Ahora, el menor recibe terapias para su desarrollo, mientras que antes no. Además, en la actualidad la peticionaria está casada, tiene otro hijo y los abuelos maternos compraron residencia en Orlando, Florida. Así, existen cambios sustanciales y pertinentes que no están contemplados en el Informe

---

[24] *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 653.

[25] Además del perito que actualizó el Informe Interagencial, la prueba testifical consiste en la Sra. Shayra Santiago, la Sra. Shayleen Norat y el Sr. Vitor Da Cunha (madre, hermana y esposo de la peticionaria, respectivamente).

Interagencial original, el cual será utilizado por la Trabajadora Social como uno de los referentes para rendir el Informe Social que le será presentado al tribunal.

En cuanto a la denegatoria de la prueba testifical, resaltamos que los testigos anunciados son parte esencial en la adjudicación de la solicitud de traslado, entiéndase la abuela y la tía materna del menor, el esposo de la peticionaria y el perito que actualizó el Informe Interagencial.[26] Ello, pues ante una solicitud de traslado el tribunal no considerará solamente el Informe que presenta la trabajadora social, sino la prueba y testimonios que le ayuden a estar en posición de resolver conforme lo estatuido en la Ley Núm. 102-2018.[27]

No podemos avalar que se adjudique la solicitud de traslado del menor sin contar con todos los elementos a considerar. Todo lo contrario, debemos viabilizar que esta decisión sea una informada como estatuye la Ley Núm. 102-2018. **Los criterios enumerados en la Ley Núm.102-2018 deben ser considerados** -en la medida en que apliquen y de una forma u otra- en el Informe Interagencial. Es decir, dicho informe sirve de apoyo para el Informe Social posterior que la Trabajadora Social rendirá al tribunal y, consecuentemente, servirá para la adjudicación en los

---

[26] Nótese que el propio recurrido aceptó que la señora Santiago fue anunciada con anticipación. Véase *Memorando en oposición a expedición de auto de certiorari*, pág. 19.

[27] Nótese, además, que tan reciente como el 17 y 18 de enero de 2023 el recurrido depuso a la peticionaria. Véase, Apéndice del recurso de *certiorari*, págs. 1421-1423.

méritos. Lo contrario sería dar paso a una adjudicación de un asunto revestido de alto interés público con una información incompleta y obsoleta.

De no llegar a esta determinación, el foro primario recibiría un Informe Social realizado en parte tomando en cuenta un Informe Interagencial que no considera actualizaciones en aspectos fundamentales. Ello, sin duda no opera a favor del mejor interés y bienestar del menor.

Por último, independientemente de a quién es atribuible la dilación del caso, el perjudicado es el menor. Ciertamente, la determinación a la que llegamos hoy trae consigo que transcurra un poco más de tiempo antes de que el Tribunal de Primera Instancia pueda adjudicar la solicitud de traslado. Sin embargo, ello no es óbice para que nos crucemos de brazos y permitamos que se adjudique el caso sin los elementos estatuidos en ley. El llamado en este tipo de casos es a vindicar el criterio rector que permea, es decir, velar por el mejor interés y bienestar del menor. Sin duda, ello se logra al contar y sopesar todos los elementos necesarios para llegar a una determinación informada.

## IV

Por todo lo anterior, expedimos el auto, revocamos a los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que permita el Informe Interagencial actualizado, autorice los testigos y se rinda a la brevedad posible el Informe Social correspondiente. Además,

concluido el descubrimiento de prueba adicional, si alguno, ordenamos a que se celebre una vista, en un término de 5 días, para atender en los méritos la solicitud de traslado. Celebrada la vista, el Tribunal de Primera Instancia deberá adjudicar en un término no mayor de 10 días la solicitud de traslado.

Se dictará sentencia de conformidad.


                                        Erick V. Kolthoff Caraballo
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel A. Jusino González

     Recurrido

        v.               CC-2023-0080

Leiza Lee Norat Santiago

     Peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 13 de abril de 2023.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, y sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, expedimos el auto, revocamos a los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo expuesto en esta Opinión.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo