EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Emilio Pena Fonseca, et al.<br>Demandantes-Recurridos<br><br>V.<br><br>Emibel Pena Rodríguez, et al<br>Demandados-Recurridos<br><br>v.<br><br>Departamento de la Familia<br>Procuradora Especial de<br>Relaciones de Familia<br><br>Peticionaria | Certiorari<br><br>2005 TSPR 84<br><br>164 DPR \_\_\_\_ |

Número del Caso: CC-2005-356

Fecha: 15 de junio de 2005

Tribunal de Apelaciones:

> Regional Judicial de Bayamón

Juez Ponente:

> Hon. Yvonne Feliciano Acevedo

Oficina del Procurador General:

> Lcda. Lizette Mejías Avilés
> Procuradora General Auxiliar

Abogado del Recurrido:

> Por Derecho Propio

Materia: Custodia y Privación de Patria Potestad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emilio Pena Fonseca, et al.
    Demandantes-Recurridos

      v.

Emibel Pena Rodríguez, et al
    Demandados-Recurridos        CC-2005-356

      v.

Departamento de la Familia
Procuradora Especial de
Relaciones de Familia
    Peticionaria


Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez


San Juan, Puerto Rico, a 15 de junio 2005

El caso de epígrafe es secuela de nuestro dictamen anterior en *Pena v. Pena*, 152 D.P.R. 820 (2000). Allí resolvimos que los menores cuya custodia era objeto de litigio debían someterse a unas pruebas sicológicas adicionales a las ya efectuadas, a realizarse por una perito privado, si se demostraba que éstas eran necesarias y si el tribunal de instancia, en el ejercicio de su discreción, las ordenaba. La controversia en esta ocasión gira en torno a si se estableció la necesidad de las pruebas y si el foro de instancia abusó de su discreción al denegar las mismas. Veamos.

**I**

Los hechos de este caso y su curso procesal son intricados y lamentables. Se enfrentan aquí, en un agrio proceso de privación de custodia y patria potestad unos abuelos y los padres biológicos de los menores. El pleito se inició en el año 1996 mediante la presentación de una demanda por los aquí recurridos, Emilio Pena Fonseca y Elizabeth Rodríguez Rivera (los esposos "Pena-Rodríguez" o los "demandantes"), reclamando para sí la custodia de sus nietos por alegado maltrato y negligencia. La demanda se instó en contra de los padres de los menores, la hija de los esposos Pena-Rodríguez, Emibel Pena Rodríguez y su esposo, Samuel Capó Gómez (los esposos "Capó-Pena").[1] Se alegó que el señor Capó Gómez era un mal ejemplo para sus hijos y les maltrataba; contra la madre se adujo que ésta nada hacía para proteger a los menores. Se solicitó entonces que se les privara permanentemente de la custodia, tutela y de la patria potestad de sus tres hijos menores; y, que la custodia de éstos se les concediera a los abuelos maternos, los esposos Pena-Rodríguez.

Los demandados contestaron la demanda negando lo alegado y reconvinieron. En la reconvención alegaron que el pleito instado era un intento de los demandantes de acosarlos y acusarlos falsamente para privarlos de sus hijos.

---

[1] Los demandados están casados entre sí y han procreado tres niños, a saber: a C.A.C.P., nacido el 11 de agosto de 1992; a S.E.C.P., nacido el 5 de junio de 1993; y, a M.A.C.P. nacido el 11 de marzo de 1995.

Durante el proceso de descubrimiento de prueba los esposos Pena-Rodríguez solicitaron tomar unas deposiciones a varios funcionarios del Departamento de la Familia que habían intervenido en el caso. Además, solicitaron que los menores fueran sometidos a evaluaciones sicológicas, por peritos privados contratados por la parte demandante; adicionales a las que ya se habían llevado a cabo. El Tribunal de Primera Instancia denegó ambas peticiones y el foro apelativo intermedio enmendó dicho dictamen autorizando que los menores se sometieran a unas pruebas sicológicas adicionales, pero confirmando la denegatoria de la toma de deposiciones. Las partes afectadas por la determinación del foro apelativo acudieron ante nosotros.

Consolidados los recursos instados y evaluados los planteamientos de las partes, mediante sentencia revocamos la determinación del foro apelativo. Específicamente dispusimos en nuestra sentencia:

> [R]evocamos la sentencia del Tribunal de Circuito de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para los procedimientos correspondientes. En primer lugar, el Tribunal de Primera Instancia determinará si la información que ha de ser obtenida mediante la toma de deposiciones es necesaria para la resolución de la controversia, y si la divulgación de dicha información no milita contra los mejores intereses de los menores. De concluir que la información es necesaria, y que su divulgación no atenta contra los mejores intereses de los menores, el tribunal determinará la información sobre la cual los funcionarios pueden ser depuestos. De lo contrario, el tribunal denegará la toma de las deposiciones. **En segundo lugar, previa evaluación psicológica de los menores por un perito del tribunal, el Tribunal de Primera Instancia permitirá, a su discreción, evaluaciones psicológicas adicionales**

> **realizadas por peritos privados, de así solicitárselo la parte interesada y demostrar su necesidad.** (Énfasis nuestro.)

*Pena*, 152 D.P.R. pág. 822.

Devuelto el caso al foro de instancia éste prosiguió en su curso accidentado. En junio de 2001, se celebró una vista de seguimiento y de la Minuta levantada se desprende que sobre las evaluaciones solicitadas por el demandante, el tribunal dispuso que las llevaría a cabo el Programa de Relaciones de Familia del tribunal. Señaló además que habría de nombrar un perito y que ello no era óbice para que de estimarlo necesario, las partes hicieran lo propio para su asesoramiento. Además, autorizó la toma de las deposiciones.

Posteriormente, en junio de 2002, los esposos Pena-Rodríguez presentaron una moción ante el tribunal de instancia solicitando nuevamente que se les permitiera someter a los esposos Capó-Pena y a los menores a unas evaluaciones sicológicas por un perito privado.

La solicitud de evaluación de los esposos Capó-Pena obedecía a que, alegadamente, el estado mental de éstos estaba en controversia, por lo que se solicitaba que se permitiera dicho examen a tenor con la Regla 32.1 de las de Procedimiento Civil. 32 L.P.R.A. Ap. II, R. 32.1. Por otro lado, la solicitud de evaluación sicológica de los menores obedecía a la necesidad de determinar qué efecto había tenido sobre los menores el alegado maltrato al que los sometían sus padres. Se indicó en dicha moción que los

informes y las evaluaciones hechas hasta ese momento contenían hallazgos y recomendaciones inconsistentes, sin especificar en qué consistían tales inconsistencias. Finalmente, se anunció que la Dra. Carol Romey serviría como perito de la parte demandante.

A dicha solicitud se opuso la Procuradora Especial de Relaciones de Familia del Departamento de Justicia bajo el fundamento de que a los menores ya se les había sometido a una batería de exámenes sicológicos, por lo que era innecesaria otra evaluación.

El 7 de agosto de 2002, el tribunal de instancia denegó la solicitud indicando que ya los demandados habían sido evaluados por los peritos del tribunal. Nótese que la orden del tribunal se refiere a los demandados y nada dice sobre los menores.

El 14 de agosto de 2000, la parte demandante presentó una moción titulada "Moción urgente solicitando reconsideración de la orden que deniega a la parte demandante la evaluación de la parte demandada por peritos privados" (la "Moción Urgente"). En esta moción los demandantes argumentaron, **exclusivamente, sobre la necesidad de que se les permitiera evaluar a los esposos Capó-Pena.**

Así las cosas, el 15 de agosto de 2000, en una vista de seguimiento celebrada en el tribunal de instancia, la representación legal de los demandantes le informó al tribunal que se proponía impugnar el informe social

presentado pero que necesitaría un período de quince (15) días para presentar sus objeciones. El tribunal accedió a dicha petición.

Ese mismo día y mediante moción al tribunal, se informó que los esposos Pena-Rodríguez habrían de impugnar también los siguientes informes, a saber: el informe sicológico preparado por la Dra. Mari Gloria Hamilton, perito sicóloga nombrada por el tribunal; los informes sociales del Centro Génesis, institución privada contratada por el Departamento de la Familia; los informes del Dr. José Torres, perito siquiatra nombrado por el tribunal y los informes de las trabajadoras sociales del Programa de Relaciones de Familia del tribunal. Se informó en dicha moción que la Dra. Romey necesitaba revisar el expediente del tribunal donde constaban los informes antes mencionados, para rendir su informe a la parte demandante. Se solicitó por lo tanto que se dictara una orden autorizando el acceso de la Dra. Romey al expediente del tribunal.

Con posterioridad a dicha vista, el 9 de septiembre de 2002, el tribunal acogió los planteamientos de la parte demandante contenidos en la Moción Urgente del 14 de agosto y autorizó las evaluaciones **de los esposos Capó-Pena** por la Dra. Romey. Luego de varias mociones de la parte demandante, en diciembre de 2002 el tribunal autorizó el acceso al expediente del caso solicitado para la Dra. Romey.

Para el año 2003, constan en el expediente varias mociones de la parte demandante solicitando del tribunal que notificara la orden de citación de los esposos Capó-Pena para ser evaluados por la Dra. Romey. Así también, surge del expediente que el demandante, licenciado Pena Fonseca, ahora representándose a sí mismo y a su esposa, solicitó la recusación del juez de primera instancia que había atendido el caso desde temprano.[2] Por otro lado, no hay en el expediente indicio alguno que la Dra. Romey revisara los informes sometidos al tribunal por los distintos peritos, según le fue autorizado en diciembre de 2002.[3]

En febrero de 2004, el caso fue reasignado a un nuevo juez quien citó a las partes para una vista de seguimiento. El 27 de abril de 2004 se celebró la vista. En la misma, el tribunal indicó que toda vez que la parte demandante no había sometido al tribunal las áreas que pretendía impugnar de los informes sometidos en este caso en el término que le fue concedido para ese propósito, se denegaba la solicitud de evaluación sicológica a los menores.

---

[2] A través de los años ocho (8) jueces han intervenido este caso.

[3] En varias mociones al tribunal, la parte demandante señaló que el protocolo seguido por la Dra. Carol Romey le requiere que antes de evaluar a unas personas, debe revisar todos los informes que sobre éstas se han rendido. Ello, para no sentirse influenciada por el contenido de los informes al entrevistar a los evaluados. Lo cierto es sin embargo, que la demandante había representado al tribunal que el propósito de revisar los informes era para impugnar los mismos y que la Dra. Romey pudiera rendir su informe.

Por otro lado, el 9 de junio de 2004, el tribunal de instancia dictó una orden en la cual dispuso que se actualizaran los informes preparados por los trabajadores sociales. El tribunal razonó que ello era necesario para tener ante sí "el mayor cúmulo de datos para cumplir su obligación de garantizar el bienestar de los menores envueltos." Procedió además a denegar una petición tanto del demandante, licenciado Pena Fonseca, como de la parte demandada de representarse a sí mismos.[4]

Inconforme, la parte demandante acudió en alzada ante el Tribunal de Apelaciones. Entre los errores señalados se cuestionó que no se le permitiera evaluar sicológicamente a los menores. El tribunal apelativo revocó al tribunal de instancia. En su sentencia concluyó que no había razón alguna para que dicho foro denegara la solicitud de evaluación de los menores la cual, según el foro apelativo, había sido autorizada en la orden del 9 de septiembre de 2002.[5] El tribunal apelativo intermedio autorizó se efectuaran las pruebas sicológicas privadas a los menores por entender que ello no era contrario a sus mejores intereses y a su bienestar; y que, por el contrario, negar las mismas "equival[ía] a denegarles [a la

---

[4] De dicha determinación la parte demandante acudió ante el Tribunal de Apelaciones quien confirmó al foro de instancia. Posteriormente, acudió ante nosotros y el 27 de abril de 2005 denegamos la expedición del recurso instado.

[5] Esta conclusión del Tribunal de Apelaciones es claramente errónea. La orden dictada por el Tribunal de Primera Instancia el 9 de septiembre de 2002 fue para autorizar la evaluación sicológica de los esposo Capó-Pena, no de los menores.

parte demandante] la oportunidad de impugnar el testimonio pericial."

Inconforme con la determinación del Tribunal de Apelaciones, la Procuradora Especial de Relaciones de Familia acudió ante este Tribunal. En su escrito planteó el siguiente error:

> Erró el Tribunal de Apelaciones al permitir la evaluación sicológica de unos menores por parte de peritos privados contratados por la parte demandante, a pesar de que no se demostró una clara necesidad de llevar a cabo el mismo, basado ello en que el realizado por el perito del tribunal fuese insuficiente, inadecuado o que dicho perito no poseía el conocimiento o medios para efectuar el examen necesario.

El pasado 27 de abril de 2005, le concedimos a la parte recurrida un término de cinco (5) días para que mostrara causa de por qué no debíamos revocar el dictamen del Tribunal de Apelaciones. Ésta compareció el pasado 4 de mayo de 2005 conforme le fuera ordenado.

Evaluados detenidamente los escritos de las partes, el expediente ante nuestra consideración, así como también el voluminoso expediente del Tribunal de Primera Instancia, resolvemos conforme intimamos. Veamos entonces.

## II

De ordinario, la decisión de privar a un padre o a una madre de la custodia y patria potestad de su hijo es una de las más delicadas y en ocasiones angustiosas a que se enfrenta un magistrado; a la misma vez, es una de las decisiones de mayor trascendencia para el futuro de ese menor. Cuando la decisión tiene como fundamento alegados

malos tratos a ese menor, aquello que se supone grave de suyo, se torna en algo aun más complejo.

La determinación de a quién le corresponde la custodia de un menor es una que está precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado; y, tiene como norte, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor. *Santana Medrano v. Acevedo Osorio*, 116 D.P.R. 298, 301 (1985). Véase además, *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90 (1976); *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495, 508 (1978).

Aun cuando el derecho de un progenitor a tener consigo a sus hijos es uno de superior jerarquía,[6] el mismo tiene que ceder ante la facultad de *parens patriae* del Estado de salvaguardar y proteger el bienestar del menor. *Ortiz García v. Meléndez Lugo*, res. 3 de marzo de 2005, 163 D.P.R ___; 2005 JTS 25; 2005 TSPR 19. Véase además, D. Kramer, *Legal Rights of Children*, McGraw Hill, Inc., 2da ed., 1994, sec. 2.04, pág. 39. La función de *parens patriae* del Estado, delegada en los tribunales, se ejerce precisamente determinando a quién le corresponde la custodia del menor en su resguardo. Cualquier "conflicto que perciba el tribunal entre intereses ajenos y el mejor interés de un menor deberá resolverse a favor del menor." *Íd.*, pág. 780.

___

[6] El Tribunal Supremo de los Estados Unidos ha expresado que la relación paterno-filial está protegida constitucionalmente por el derecho a la libertad de la Decimocuarta Enmienda de la Constitución de los Estados Unidos. *Stantosky v. Kramer*, 455 U.S. 745, 754-55 (1982). Véase además, *Sterzinger v. Ramírez*, 116 D.P.R. 762 (1985).

Véase, *Sánchez Cruz v. Torres Figueroa*, 123 D.P.R. 418, 431 (1989); *Rodríguez v. Gerena*, 75 D.P.R. 900, 901-902 (1954).

Un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones paterno-filiales, no puede actuar livianamente. De ahí que debe contar con la información mas completa y variada posible para resolver correctamente. Es por ello que hemos dispuesto que en casos de esta naturaleza, el tribunal puede "ordenar la comparecencia de cuanta persona entienda pueda ayudarle en el descargo de su delicada misión y puede, asimismo, ordenar aquellas investigaciones de índole social que entienda procedentes y convenientes." *Santana Madrano, ante*, pág. 301; *Castro v. Meléndez*, 82 D.P.R. 573, 578 n. 4 (1961).

En esta tarea, el tribunal puede también a su discreción, buscar la asistencia de peritos en la conducta humana que le sirvan de herramienta para facilitar la comprensión de los asuntos ante su consideración; así como, facilitar la correcta solución de los mismos. *E.g., San Lorenzo Trading, Inc. V. Hernández*, 114 D.P.R. 704 (1983); *Urrutia v. A.A.A.*, 103 D.P.R. 643 (1975). Véase además, Regla 59 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 59. Este perito asistirá al juzgador de los hechos proveyéndole información sicológica que sea relevante para atender y resolver las controversias legales ante la consideración del magistrado. Véase, Gould, Scientifically crafted child custody evaluations part one: A mode for

interdisciplinary collaboration in the development of psychological questions guiding court-ordered child custody evaluations, 37 *Fam. & Conciliation Courts Rev.* 64, 68 (1999).

El perito seleccionado por el tribunal, actuando bajo su control, será "el medio más efectivo para llegar al conocimiento de la verdad." *Bahr v. Am. Railroad Co.*, 61 D.P.R. 917, 926 (1943). Pues, como acertadamente apuntamos en *Centeno Alicea v. Ortiz*, 105 D.P.R. 523, 525 (1977), donde una abuela y una madre litigaban la custodia de un menor, "[l]os peritos de la demandante, como generalmente ocurre cuando son peritos de parte, favorecen la oposición de la demandante, y los de la demandada favorecen la posición de ésta."[7] Por el contrario, el perito nombrado por el tribunal, por su imparcialidad, se convierte en un valioso recurso para informar con objetividad sobre los factores sicológicos, emocionales o sociales que inciden sobre las controversias legales. Debemos recordar sin embargo que, en última instancia, "la responsabilidad y la capacidad para adjudicar un pleito de custodia descansa, no en los peritos, sino en los tribunales." *Ortiz García v. Meléndez Lugo, ante,* pág. 784.

---

[7] El profesor Chiesa nos advierte sobre este mismo asunto cuando nos indica que, "el problema central del testimonio pericial es la parcialidad que lo caracteriza . . . Las partes presentan a sus peritos para adelantar el resultado querido; así lo permite el sistema adversativo." E. Chiesa, *Tratado de Derecho Probatorio*, Publicaciones JTS, 1998, Tomo, 1, págs. 584-85.

Con marcada frecuencia en casos de custodia, los menores involucrados son sometidos a pruebas sicológicas durante la litigación del caso por peritos contratados por las partes. Véase, K. Katz, "Allegations of Abuse in Child Custody and Visitation Proceedings", en *Child Custody and Visitation Law and Practice*, Mathew Bender, 1995, Vol. 5, sec. 31.06[1], pág. 31-142. ("Evaluations are routinely done in contested custody cases even when there are no accusations of child maltreatment.") D. Shuman, *Psychiatric and Psychological Evidence*, Shepard's McGraw Hill, Inc., 1995, 2da ed., sec 13.02, pág. 13.4. ("Although psychiatric and psychological testimony is not required in custody and visitation proceedings, this is the proceeding in which such evidence is most frequently used.")[8]

---

[8] Esta práctica, sin embargo, es objeto de crítica en la doctrina ante la ausencia de evidencia empírica que sustente su utilidad. El profesor Shuman nos señala sobre este asunto en particular lo siguiente:

> The thrust of this criticism is that no empirical data exists to demonstrate the usefulness of psychological theory in child custody determinations, that ambiguous psychological theories are often used as excuses for bad legal decisions, and that, at best, testimony based on psychological theory is simple common sense and a superfluous use of experts.

D. Shuman, *Psychiatric and Psychological Evidence*, Shepard´s McGraw Hill, Inc., 1995, 2da ed., sec 13.02, pág. 13.5. Okpaku, Psychology: Impediment or Aid in Child Custody Cases, 29 *Rutgers L. Rev.* 1117, 1140 (1976)("Empirical findings directly or indirectly relevant to questions for which judges deciding difficult cases need answers are virtually non existent.")

Otros sin embargo, sostienen lo contrario. Knowlton, Psychology evaluations of children: Their place in the courtroom, 66 *N.D. L. Rev.* 673, 684 (1990) ("The psychological evaluation of children for court proceedings

En *Otero v. Delbrey*, 144 D.P.R. 688 (1998) reconocimos que un tribunal, en el ejercicio de su discreción, puede ordenar exámenes físicos o mentales a menores de edad en procesos de naturaleza civil relativos a su custodia y patria potestad, cuando se demuestre una necesidad clara para ello. En dicha ocasión intimamos lo que ahora resolvemos, a saber: que tales exámenes pueden ser autorizados discrecionalmente debido a los estrechos vínculos sanguíneos que existen entre los menores y las partes y, que una de éstas tiene la custodia física o control directo del menor.[9]

Además, no podemos perder de vista que en estos casos se dilucidan asuntos de vital importancia para un menor, que requieren del tribunal la ponderación de factores delicados, sutiles y en muchas ocasiones, conflictivos. En ese sentido entonces, mientras mayor información esté disponible para el tribunal --así como para las partes--,

---

can provide substantial information useful in determining the best interests of the child. Psychologist can provide specific data regarding a child's cognitive and personality functioning that can help the court understand the special characteristics and needs of the child.")

[9] Adviértase, que la Regla 32.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 32.1, dispone que un tribunal puede ordenar un examen físico o mental solamente cuando: (1) el examen solicitado se refiere a una parte en el pleito; y (2), tiene que estar en controversia el estado físico o mental de esa parte.

más informada y justa será la decisión que se tome. Los tribunales tienen el poder inherente para tomar las medidas que entiendan necesarias para cerciorarse que los casos se resuelven correctamente.

De otra parte, hemos resuelto que conforme la facultad de *parens patriae* del tribunal, éste puede ordenar la comparecencia de todas las personas que le puedan servir de ayuda para descargar su delicada responsabilidad incluyendo ordenar "las investigaciones de índole social que entienda procedentes." *Santana Madrano, ante,* pág. 301. Si ello es así, también puede al amparo de tal facultad, ordenar que los menores involucrados se sometan a evaluaciones sicológicas o siquiátricas cuando las circunstancias lo ameriten.

Ahora bien, esta facultad discrecional debe ejercerse juiciosamente. En *Delbrey,* puntualizamos la importancia que en su determinación, el tribunal sopese "los efectos adversos que pueda tener en la intromisión personal . . . dicho examen." *Íd.,* pág. 701. Véase además, *Pueblo v. Arocho Soto*, 137 D.P.R. 762 (1994).

Así pues, cuando una parte interese que peritos privados sometan a unos menores a evaluaciones sicológicas o siquiátricas adicionales a las ya efectuadas por el perito del tribunal, **la parte solicitante tiene que demostrar, como cuestión de umbral, una necesidad clara que justifique las pruebas adicionales.** *Delbrey, ante.* Establecida la clara necesidad para las pruebas, entonces

**el tribunal debe sopesar los intereses de quien peticiona, frente al derecho a la intimidad de esos menores.** En ese ejercicio, el tribunal deberá sopesar, entre otros, los siguientes factores: la naturaleza del examen solicitado y lo intrusivo del mismo; la edad del menor involucrado; el efecto o la carga emocional o física que el examen o evaluación adicional conllevará para el menor; el valor probatorio que ese testimonio pericial tendrá sobre la controversia legal planteada ante el tribunal y la evidencia disponible a las partes y al tribunal en ese momento. *Melanie K.P. v. MacQueen*, 484 S.E.2d 635, 637 (W. Va. 1997). En el contexto de derecho penal véanse, en igual sentido, *People v. López*, 800 N.E.2d 1211 (Ill. 2003); *State v. Delaney*, 417 S.E.2d 903 (W. Va. 1992); *Bartlett v. Hamwi*, 826 So.2d 1040 (Fla. App. 1993); *People v. Chard,* 808 P.2d 351 (Colo. 1991) *cert. denied* 502 U.S. 863 (1991); *State v. Ramos*, 553 A.2d 1059 (R.I. 1989); *Moor v. State*, 709 P.2d 498 (Alaska App. 1985); *Lanton v. State*, 456 So.2d 873 (Ala. 1984) *cert. denied* 471 U.S. 1095 (1985). Véase además, J. Atkinson, *Modern Child Custody Practice*, Mathew Bender, 2da ed., vol. 2, sec. 13-1, págs. 13-1-13-4.

Adviértase que, en gran medida, lo que se desea es minimizar cualquier efecto perjudicial que las constantes evaluaciones en casos de esta naturaleza tienen sobre los menores. No podemos abstraernos de la realidad de que estos casos están matizados por una fuerte carga emocional

que afecta no tan solo a las partes sino también, y sobre todo, a los menores involucrados. De esta forma, logramos establecer un adecuado balance entre el interés de las partes de llevar a cabo su descubrimiento de prueba y el derecho a la intimidad de los menores. En última instancia, el derecho a descubrimiento de prueba de una parte no puede satisfacerse a costa de la salud emocional de un menor. Por otro lado, cabe recordar que un tribunal está facultado para, discrecionalmente, limitar el número de peritos que pueden ser presentados por las partes. Regla 55 de las Reglas de Evidencia, 32 L.P.R.A. Ap. IV, R. 55.

Aclaramos que las partes siempre pueden, como en efecto ha ocurrido en este caso, contratar los peritos que entiendan necesario para que les asesoren durante estos procesos.

Conforme el marco doctrinal antes descrito es que procede evaluar si la parte demandante ha probado la necesidad clara de efectuar pruebas sicológicas adicionales a los menores objeto de esta contienda y si constituyó un abuso de discreción la negativa del foro de instancia a ordenarlo. Veamos entonces.

### III

La parte demandante, ahora recurrida, ha esgrimido distintas justificaciones para las pruebas que ha solicitado. Inicialmente, adujo que éstas eran necesarias para auscultar cómo el alegado maltrato de los padres de

los menores les ha afectado. Además, ha planteado que los informes periciales sometidos ante el tribunal de instancia son inconsistentes e incongruentes.

Como indicamos anteriormente, los menores en este caso han sido evaluados ya por trabajadores sociales del Programa de Relaciones de Familia del tribunal; la sicóloga, Dra. Mari Hamilton; el siquiatra, Dr. José Torres; y, personal del Centro Génesis, contratado por el Departamento de la Familia. Además, el Departamento de la Familia ha mantenido a la familia Capó-Pena en un plan de servicios, el cual incluye la supervisión del trabajador social José A. Cosme Tañón; quien ha rendido informes periódicos desde el año 2002 hasta el presente. Es evidente de lo anterior que los menores en este caso, al igual que todo su contorno familiar, han sido evaluados extensamente.

La alegación conclusiva que estos informes son incongruentes, inconsistentes e irreconciliables, sin más, es insuficiente para determinar que se cumplió con el requisito de umbral de probar la clara necesidad de los exámenes adicionales. No se ha indicado en qué consisten tales inconsistencias e incongruencias y cómo los informes son irreconciliables entre sí.

Por otro lado, aun si se mostrara que se cumple con el requisito de umbral de clara necesidad, porque se requiere auscultar mediante los exámenes solicitados cómo se han afectado los menores por la alegación de maltrato, al

aplicar los criterios antes mencionados a la luz de la totalidad del expediente, no procede autorizar las evaluaciones. Actuó correctamente el Tribunal de Primera Instancia.

No hay duda que las pruebas solicitadas se refieren a asuntos que ya han sido examinados por varios especialistas en conducta humana. Muy poco pueden abonar estos nuevos exámenes al conocimiento que ya se tiene sobre el estado emocional de los menores y su entorno familiar. No hay duda que los exámenes solicitados supondrán una carga emocional pesada y una intromisión adicional en la intimidad de estos menores. Adviértase, estamos ante unos menores que durante los últimos nueve años --más de la mitad de sus vidas--, han estado sometidos a continuos exámenes sicológicos y evaluaciones sociales, así como a la incertidumbre de saber quién velará por ellos. Además, es evidente que el foro de instancia cuenta con vasta y variada información sobre distintos aspectos de la vida de estos menores, de sus padres y su entorno familiar y social, como para poder tomar una decisión informada sobre su custodia y patria potestad. Estos informes a su vez están disponibles a todas las partes.

Resumimos, los recurridos no han demostrado que la nueva evaluación sicológica sea claramente necesaria "ni que los beneficios que [se] obtendría sobrepasarían las consecuencias perjudiciales que ello pudiera ocasionar a los menores, que ya han estado sometidos a un sinnúmero de

evaluaciones periciales." *Otero v. Delbrey,* 144 D.P.R. pág. 704. No constituyó un abuso de discreción la denegatoria del tribunal de instancia.

No dudamos que los abuelos maternos han actuado en todo momento movidos por una genuina preocupación sobre el bienestar y la salud de sus nietos. Sin embargo, permitir que estos menores se sometan a una batería de pruebas adicionales no tan solo les afectará emocionalmente sino que dilatará aun más un proceso que bajo cualquier óptica, ya se ha dilatado demasiado. La tardanza en la solución final de este caso, que según se desprende de los autos es claramente imputable a todas las partes involucradas, poco abona a sanar las heridas que el pleito ha generado. Con demasiada frecuencia, las controversias sobre custodia se convierten en batallas encarnizadas entre las partes y en lidia pericial interminable, perdiendo de vista todos los involucrados que quien más se perjudica es aquél a quien se desea proteger. Véase, K. Katz, *op. cit.,* sec. 31.05. El tribunal debe velar en la medida de lo posible, que ello no ocurra.

## IV

Por los fundamentos antes expuestos resolvemos que no constituyó un abuso de discreción denegar la solicitud de la parte demandante-recurrida de someter a los menores a pruebas sicológicas adicionales por no haberse demostrado la clara necesidad para las mismas. Habida cuenta de lo anterior, se revoca la determinación del Tribunal de

Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo aquí expresado.[10]

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

---

[10] Del expediente del caso surge que, con posterioridad a los informes sometidos por la Dra. Mari Hamilton y el Dr. José Torres, se reportó un incidente de violencia doméstica en el matrimonio Capó-Pena; surge también que el señor Capó aceptó haber utilizado drogas. Habida cuenta de lo anterior, si el tribunal entiende, en el ejercicio de su discreción, que dichos informes deben ser actualizados, podrá ordenar que así se haga pero cerciorándose que ello se hace en un término razonablemente corto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Emilio Pena Fonseca, et al.
        Demandantes-Recurridos

            v.

Emibel Pena Rodríguez, et al
        Demandados-Recurridos            CC-2005-356

            v.

Departamento de la Familia
Procuradora Especial de
Relaciones de Familia
        Peticionaria



                        SENTENCIA

        San Juan, Puerto Rico, a 15 de junio de 2005

        Por los fundamentos expuestos en la Opinión
que antecede, la cual se hace formar parte
integrante de la presente, resolvemos que no
constituyó un abuso de discreción denegar la
solicitud de la parte demandante-recurrida de
someter a los menores a pruebas sicológicas
adicionales por no haberse demostrado la clara
necesidad para las mismas, por lo que revocamos la
determinación del Tribunal de Apelaciones y se
devuelve el caso al Tribunal de Primera Instancia
para que continúen los procedimientos acorde con
lo aquí expresado.

        Lo pronunció, manda el Tribunal y certifica la
Secretaria del Tribuna Supremo.  El Juez Asociado
señor Rivera disiente sin opinión escrita.



                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo