ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| CARMEN DELIA SANTIAGO RODRÍGUEZ  Recurrida  v.  ANTONIO MALDONADO VARGAS  Peticionario | KLCE202400207 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón  Civil Núm.: BY2022RF02041  Sobre: Orden denegando la Impugnación del Informe Social |
|---|---|---|

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 5 de abril de 2024.

El señor Antonio Maldonado Vargas (en adelante, peticionario o Maldonado Vargas), solicita la revisión de la Orden emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 2 de enero de 2024. Mediante esta el foro primario le denegó al peticionario la impugnación del Informe Social por haber transcurrido más de los 20 días que el tribunal le concedió para ello. Solicitan además la revisión de la Resolución notificada el 9 de enero de 2024 en la que el foro primario acogió el Informe Social.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y revocamos la resolución recurrida. Entendemos que existía causa, por razón de la enfermedad de la abogada del peticionario, para no haber respondido la orden del tribunal en el término de veinte (20) días concedido.

Número Identificador

SEN2024 _____

# I.

El trasfondo procesal y fáctico de esta reclamación se resume de la siguiente manera:

La señora Carmen Delia Santiago Rodríguez, es la abuela materna de las menores MKMN de once (11) años y MSMN de siete (7) años. Al fallecer la madre de las menores, su abuela presentó una solicitud de custodia y alimentos contra el padre de las niñas, el señor Antonio Maldonado Vargas. Este se encontraba recluido en el Complejo Correccional de Arecibo por haber violado una orden de protección expedida a favor de la madre de las menores.

El 19 de diciembre de 2022 el foro primario celebró una vista y al día siguiente, 20 de diciembre de 2022, dictó una Sentencia concediendo la custodia legal provisional a la señora Santiago Rodríguez. El 21 de febrero de 2023 compareció la abogada adscrita al Programa Pro-Bono del Colegio de Abogados de Puerto Rico, en representación del señor Antonio Maldonado Vargas mediante *Moción asumiendo representación legal y solicitud de 15 días para contestar la demanda*. El 22 de febrero de 2023 el Tribunal aceptó lo solicitado.

El 15 de marzo de 2023, el señor Maldonado Vargas, representado por la abogada del Programa acudió a la vista para fijar la custodia permanente. Allí se le notificó al tribunal que el demandado estuvo confinado y que ahora estaba en probatoria. Indicó que solicitaba la custodia compartida en los fines de semana. El foro de instancia reseñaló el juicio en su fondo para el 19 de abril de 2023 y, además, refirió el caso a la División Social para un estudio de custodia y relaciones paterno filiares. En específico indicó "evaluar bajo 223 y/o relaciones filiales de no

cualificar para la custodia compartida".[1]   A su vez, le concedió al señor Maldonado Vargas hasta el 30 de marzo para contestar la demanda. El 21 de marzo de 2023 el tribunal primario emitió un referido para que el peticionario viera a sus dos hijas en el Programa Encuentro.

Según ordenado, el 29 de marzo de 2023 el señor Maldonado Vargas presentó la *Contestación a petición de custodia y a solicitud urgente de remedio provisional*.

El 18 de abril de 2023 las partes presentaron una *Urgente moción conjunta para informar situación inesperada sobrevenida*. Allí solicitaron que el tribunal dejara sin efecto la vista señalada, que se mantenga el estado de derecho actual hasta tanto culmine el estudio social ordenado.

Luego, el 9 de mayo de 2023 la señora Santiago Rodríguez presentó una *Réplica a contestación a la demanda.*  En síntesis, alegó que el demandado representaba un riesgo para la seguridad de las niñas.[2]  El 18 de mayo de 2023 el señor Maldonado Vargas presentó una *Moción fijando nuestra posición a "réplica a la contestación" presentada por la demandante*, a la cual, ese mismo día, el foro primario le respondió "enterado".[3]

El 18 de julio de 2023 la señora Santiago Rodríguez le informó al foro primario que le solicitó a la sala especializada de violencia doméstica, la regrabación de las vistas de orden de protección celebradas los días 1 y 16 de febrero de 2021, en las que la madre fallecida de las menores testificó, para hacerlas disponibles a la trabajadora social de la Unidad Social.

---

[1] Apéndice pág. 28.
[2] Apéndice del alegato en oposición, pág. 57.
[3] Íd, pág. 61.

El 15 de agosto de 2023 la trabajadora social presentó una moción para informarle al foro primario que recibió las grabaciones de las vistas de sala de investigaciones referentes a las partes del caso. El 24 de agosto de 2023 la parte demandante Santiago Rodríguez presentó una *Moción para solicitar desacato por incumplimiento con pensión alimentaria* fijada mediante Resolución emitida el 7 de marzo de 2023.[4] El 30 de septiembre de 2023 reiteró la solicitud de desacato.[5] En respuesta, el 2 de octubre de 2023 el Tribunal señaló vista de desacato para el **27 de noviembre de 2023**.[6]

Entretanto, el 3 de noviembre de 2023 la trabajadora social presentó una *Moción de Informe Social*. Adujo que finalizó la intervención y que el informe estaba disponible para la consideración del Tribunal.

Ante ello, el 6 de noviembre de 2023, el foro primario emitió una orden que en lo aquí pertinente indica como sigue:

> La Trabajadora Social de la Unidad Social a sometido el Informe Social (preliminar) que se le encomendó, así como las evaluaciones a que fueron referidos las partes y el menor. Se autoriza a los representantes legales tengan acceso al informe y a las evaluaciones.
>
> [……..]
>
> Por otra parte, se les concede a las partes un término de veinte (20) días para mostrar causa por la cual no deba dictarse sentencia acogiendo las recomendaciones del informe. De trascurrir el término concedido, sin que las partes no presenten oposición o informen que pretenderán impugnar el mismo, se dictará la sentencia acogiendo las recomendaciones. Por el momento, se acogen las recomendaciones de forma provisional, estando las partes obligadas al cumplimiento hasta que otra cosa se disponga.
>
> Se advierte que si alguna de las partes, o ambas partes interesaran impugnar el informe, deberán

---

[4] Apéndice del alegato en oposición, págs. 69-72.
[5] Íd, págs. 87-88.
[6] Íd, pág. 89.

detallar las razones y fundamentos para ello y anunciar la prueba pericial con la que contarán para impugnar el informe. **No se atendarán impugnaciones que no vengan acompañadas de evidencia pericial que la sostenga.** El informe pericial a ser sometido deberá venir acompañado de un *curriculum vitae* del perito.[7]

Referido término vencía el lunes, 27 de noviembre de 2023. Ese día 27 de noviembre, la señora Santiago Rodríguez presentó una *Moción en cumplimiento de orden*. Allí expresó que no se oponía a que la sentencia dictada el 20 de diciembre de 2022 se convirtiera en una permanente con la inclusión de las recomendaciones brindadas en el estudio social, pero con excepción de unos asuntos sobre servicios sicológicos.

Mientras tanto, según pautado en la orden de 2 de octubre de 2023, el 27 de noviembre de 2023 se llevó a cabo la vista de desacato. Según la minuta, el señor Maldonado Vargas compareció por derecho propio y solicitó que se le concediera la oportunidad para que su abogada estuviese presente. Además, abonó a la deuda y el TPI reseñaló la vista para el 9 de enero de 2024.[8]

En atención a ello, el 28 de noviembre de 2023 el TPI le concedió veinte (20) días a la parte demandada, aquí peticionario, para que expusiera su posición a lo que solicitó la demandante.[9]

El 22 de diciembre de 2023 el señor Maldonado Vargas presentó una *Urgente moción informativa y anunciando la impugnación del informe social*. En el escrito, su abogada adujo que confrontó problemas de salud que la mantuvieron fuera de la oficina hasta el 14 de septiembre de 2023[10]. Agregó que realizó

---

[7] Apéndice págs. 85-86.
[8] Alegato en oposición, apéndice pág. 91.
[9] Apéndice pág. 89.
[10] Posteriormente en Moción de Reconsideración, la abogada del demandado aclaró que la fecha correcta era el 14 de diciembre de 2023, véase apéndice págs. 117-119.

gestiones con el Programa Pro-Bono para solicitar el pago de un perito de impugnación del informe. Mencionó que, el día previo a la moción, Pro-Bono le contestó que iban a sufragar los gastos del perito. Indicó el nombre de la doctora perito y que en moción aparte incluía el *curriculum vitae*. Aseveró que por razones de salud y por el cumplimiento con la determinación del Programa Pro-Bono, no pudo comparecer antes al tribunal.

Ese mismo día 22 de diciembre de 2023 la abogada del señor Maldonado Vargas presentó una *Moción informando perito de impugnación y sometiendo su curriculum vitae* de la Dra. Ileana Carrión Maldonado.

En respuesta, el 2 de enero de 2024 el Tribunal emitió una Orden con la siguiente determinación: "Ver orden del 6 de noviembre de 2023. El Tribunal otorgó 20 días para ello y los mismos pasaron en exceso."[11]

Luego, el 9 de enero de 2024 el Tribunal emitió una Resolución en la cual decidió lo siguiente: "Se acoge el informe social y se hacen las recomendaciones parte integral a esta resolución. El documento es uno solo para efectos de su interpretación."[12] Ese mismo 2 de enero de 2024 el TPI celebró la vista antes pautada y el señor Maldonado Vargas compareció con su abogada, más fue encontrado incurso en desacato.[13]

En desacuerdo, el 17 de enero de 2024 la representante legal del señor Maldonado Vargas presentó una *Urgente moción de reconsideración de la orden y de la resolución*. En síntesis, alegó que en la moción en que anunciaba la impugnación del informe, le expresó al tribunal que tuvo varias situaciones de

---

[11] Apéndice pág. 114.
[12] Apéndice pág. 116.
[13] Alegato en oposición, apéndice pág. 92.

salud, incluyendo COVID**,** y que por error informó que tuvo que mantenerse fuera de la oficina hasta el jueves 14 de septiembre de 2023, cuando lo correcto era hasta el 14 de diciembre de 2023. Adujo que los 20 días concedidos por el tribunal expiraron el 27 de noviembre, pero que desde el viernes 24 de noviembre se encontraba enferma y el 28 de noviembre tuvo el diagnóstico del COVID. Agregó que no podía cumplir con la orden del tribunal porque físicamente no estaba en condiciones de atender el trabajo, lo cual entendió que era justa causa. Explicó que regresó al trabajo el 18 de diciembre e hizo gestiones con Pro-Bono para que autorizaran la contratación de un perito. Incluyó como evidencia la prueba de laboratorio y la orden médica. Agregó a la moción un correo electrónico relacionado a la autorización de Pro-Bono para la contratación de un perito de impugnación, recibida por correo electrónico el 21 de diciembre de 2023. El documento también incluía una comunicación de la abogada del señor Maldonado Vargas dirigido a Pro-Bono el 13 de diciembre relacionada a otro caso. Sostuvo que negarle el derecho de impugnar el informe conllevaría una injusticia para el demandado.

El 17 de enero de 2024, notificada el día siguiente, el TPI declaró *No Ha Lugar* la solicitud de reconsideración.

Aun inconforme, el señor Maldonado Vargas acudió ante este Tribunal de Apelaciones mediante la presentación de un recurso de *certiorari* y señaló los siguientes errores:

> **Primero**: Erró el TPI al no permitir al peticionario padre de las dos menores impugnar un informe que recomenzó unas relaciones paterno filiares en el programa encuentro por una hora 2 veces al mes cuando los informes psicológicos lo consideran capacitados para ejercer el rol custodio.
>
> **Segundo**: Erró el TPI al valorar el incumplimiento del término de 20 días concedido y no valorar las razones que mediaron para el incumplimiento como justa causa, cuando lo que se está dilucidando es el derecho

constitucional del peticionario y sus hijas a relacionarse entre ellos.

**Tercero**: Erró el TPI al dictar Resolución acogiendo el informe sin una vista para discutirlo.

El 25 de marzo de 2024 Santiago Rodríguez presentó su alegato en oposición. Disponemos.

## II.

## A.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. Torres González v. Zaragoza Meléndez, 211 DPR ___ (2023), 2023 TSPR 46; McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). Así, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*. En el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. Mun. Caguas v. JRO Construction, 201 DPR 703, 712 (2019); IG Builders et al. v. BBVAPR, *supra*, pág. 338.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece la autoridad limitada de este Tribunal para revisar las órdenes y las resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. Esta dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una

resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en **casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).

[…]

En nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. García v. Asociación, 165 DPR 311 (2005); Meléndez Vega v. Caribbean Intl. News, supra, pág. 664; Lluch v. España Service Sta., 117 DPR 729 (1986); Valencia Ex Parte, 116 DPR 909 (1986). El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013); Rivera Durán v. Banco Popular, 152 DPR 140, 155 (2000). Solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Rivera Durán v. Banco Popular de Puerto Rico, *supra*, pág. 154.

**B.**

El derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica, no es mera derivación del bienestar del

niño, sino parte también de derechos fundamentales que nacen de la paternidad [o la maternidad], de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo. Rentas Nieves v. Betancourt, 201 DPR 416 (2018), citando a Sterzinger v. Ramírez, 116 DPR 762, 777 (1985). Así pues, los padres y madres tienen un derecho fundamental a criar, cuidar y custodiar a sus hijos, protegido por la Constitución. Rexach v. Ramírez, 162 DPR 130, 148 (2004). Ahora bien, aun cuando el derecho de un progenitor a tener consigo a sus hijos es uno de superior jerarquía, este tiene que ceder ante la facultad de *parens patriae* del Estado de salvaguardar y proteger el bienestar del menor. Rivera v. Morales, 167 DPR 280, 290 (2006); Pena v. Pena, 164 DPR 949 (2005); Ortiz v. Meléndez, 164 DPR 16 (2005).

Para poder determinar que un dictamen judicial sobre la custodia redundará en el mayor bienestar del menor es preciso examinar ciertos factores, entre ellos, la preferencia del menor, su interrelación con las partes, sus hermanos y otros miembros de la familia, la salud psíquica de todas las partes y otros. Muñoz Sánchez v. Báez de Jesús, 195 DPR 645, 651 (2016). La determinación de a quién le corresponde la custodia de un menor es una que está precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado; y, tiene como norte, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor. Pena v. Pena, *supra*, pág. 958.

Con ello en mente, un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones paternofiliales, no puede actuar livianamente. De ahí que debe contar con la información más completa y variada posible para

resolver correctamente. Pena v. Pena, *supra*. Esta responsabilidad incluye, a su vez, la potestad de ordenar las investigaciones de índole social que el tribunal entienda procedentes. Jusino González v. Norat Santiago, 211 DPR __, 2023TSPR47; Muñoz Sánchez v. Báez de Jesús, *supra*, pág. 652; Pena v. Pena, *supra*. No obstante, en última instancia, "la responsabilidad y la capacidad para adjudicar un pleito de custodia descansa, no en los peritos, sino en los tribunales." Pena v. Pena, *supra*, pág. 960-961. En ese sentido, mientras más información esté disponible para el tribunal -–así como para las partes--, más informada y justa será la decisión que se tome. Pena v. Pena, *supra*, pág. 962.

## C.

El proceso de privar de custodia a cualquiera de los progenitores para que solo uno obtenga –por el mejor bienestar del menor- el pleno disfrute de ésta, conlleva claras consideraciones de debido proceso de ley. Rentas Nieves v. Betancourt, *supra,* pág. 428*.* En ese contexto, el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte. Rentas Nieves v. Betancourt, *supra;* Díaz Carrasquillo v. García Padilla, 191 DPR 97 (2014); Domínguez Castro v. E.L.A., 178 DPR 1 (2010). A tales efectos, es necesario que las partes afectadas por un Informe de un Trabajador Social puedan formular objeciones al mismo y/o presentar prueba en contra de las conclusiones de dicho Informe. Rentas Nieves v.

Betancourt, *supra.*[14] Asimismo, se ha establecido que los tribunales deben proveer a la parte afectada una oportunidad para formular objeciones o presentar prueba en contra de las conclusiones de dicho informe. *Íd*.

**D.**

Por último, como regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia e incumplimiento con las órdenes del tribunal mediante su efectiva, pronta y oportuna intervención. Mejías et al. v. Carrasquillo et al., 185 DPR 288, 298 (2012); Dávila v. Hosp. San Miguel, Inc., 117 DPR 807, 816 (1986). Además, tienen el poder discrecional, según las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte. No obstante, esa determinación debe ejercerse juiciosa y apropiadamente. Mejías et al. v. Carrasquillo et al., *supra, pág. 298*; Maldonado v. Srio. de Rec. Naturales, 113 DPR 494, 498 (1982). De manera que, planteada una situación que amerita sanciones, el tribunal debe, en primera instancia, imponerlas al abogado de la parte. Si dicha acción disciplinaria no surte efectos positivos, procederá la imposición severa de la desestimación de la demanda o eliminación de las alegaciones únicamente después que la parte haya sido propiamente informada y apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida. HRS Erase, Inc. v. Centro Médico del Turabo, 205 DPR 689, 702 (2020), citando a Maldonado v. Srio. de Rec. Naturales, *supra*, pág. 498.

---

[14] Citando en carácter persuasivo a Marrero v. López Negrón (KLCE05001093), Sentencia del Tribunal de Apelaciones del 13 de septiembre de 2005 de la entonces Hon. Jueza Pabón Charneco.

Por otro lado, existen términos que no son fatales y se pueden extender o prorrogar, si la parte que presentó o notificó fuera de término demostró justa causa por la demora. Div. Empleados Públicos UGT v. CEMPR, 212 DPR ___ (2023); Rivera Marcucci et al. v. Suiza Dairy, 196 DPR 157, 170 (2016); Soto Pino v. Uno Radio Group, 189 DPR 84, 92 (2013). En tales casos, se le requiere a la parte que solicite la prórroga o actúe fuera de término que presente, mediante escrito debidamente evidenciado, explicaciones concretas y particulares que permitan concluir que hubo una excusa razonable para la tardanza o demora. Marcucci et al. v. Suiza Dairy, *supra*, págs. 171-172; Soto Pino v. Uno Radio Group, *supra*, pág. 93; Febles v. Romar, 159 DPR 714, 720(2003). En este contexto, la "enfermedad de un abogado … es una circunstancia especial, no planificada, que constituye una justa causa, siempre que se acredite fehacientemente su ocurrencia, por la cual un tribunal puede ejercer su discreción y prorrogar o permitir el cumplimiento tardío de un término de cumplimiento estricto." Lugo v. Suárez, 165 DPR 729, 740 (2005).

**III.**

El peticionario Maldonado Vargas, cuestiona las determinaciones del foro primario de no aceptar su solicitud de impugnación al informe social, por haberse presentado tal petición luego de expirado el término de veinte (20) días que el foro primario otorgó en la orden del 6 de noviembre de 2023.

Alega el señor Maldonado Vargas que le presentó prueba documental al foro primario de la situación de salud que enfrentó su abogada, pero el tribunal resolvió que no se cumplió con la orden de los veinte (20) días. Explicó, además, que carecía de recursos económicos para asumir el costo de un perito para impugnar el informe. Mencionó que, por ello tuvo que hacer

gestiones con el Programa de Pro-Bono hasta que estos aceptaron que se contratara un perito. Agregó que el TPI al dictar una Resolución acogiendo todo el Informe Social sin vista, conociendo que una parte no está de acuerdo, viola su derecho al debido proceso de ley.

La recurrida Santiago Rodríguez por su parte alega que carecemos de jurisdicción para atender el recurso. Explicó que la moción de reconsideración que presentó Maldonado Vargas no cumplió con el requisito de especificidad establecido en la Regla 47 de Procedimiento Civil de Puerto Rico[15], por tanto, no interrumpió el término. Señaló que Maldonado Vargas se centró en fundamentar las razones que justificaron su tardanza en mostrar causa por la que no debía acogerse la recomendación del Informe Social.[16] En cuanto a la petición de impugnar el informe, indicó que el peticionario se limitó a plantear que, "[l]as evidencias que dan base el informe contradicen los resultados de la recomendación final que se le ha hecho al tribunal". Sostuvo que el peticionario no especificó en que consistía la alegada

---

[15] Regla 47  Reconsideración

> La parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá presentar, dentro del término de cumplimiento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, una moción de reconsideración de la orden o resolución
> […]
> La moción de reconsideración debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales.
>
> La moción de reconsideración que no cumpla con las especificidades de esta regla será declarada "sin lugar" y se entenderá que no ha interrumpido el término para recurrir.
>
> Una vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración.

[16] Alegato en Oposición, pág. 15.

contradicción y porqué era necesaria una impugnación de la resolución notificada el 9 de enero. Es decir, si la recomendación final del informe y acogida por el TPI, era sostenida por el récord y, sobre todo, si se basó o no en el criterio rector del mejor bienestar de las niñas. Por ello, concluyó que el término para recurrir de la resolución no fue interrumpido y comenzó a transcurrir el 9 de enero de 2024 hasta el periodo de cumplimiento estricto del 8 de febrero de 2024.

En cuanto a la decisión del foro primario de acoger el informe social aludió a la Ley 223-2011, Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, que incluye el historial de violencia doméstica como uno de los factores para deben ser considerados en las decisiones de custodia. Explicó que la decisión del TPI fue correcta a la luz de la totalidad de las circunstancias y ejerció su autoridad de parens patriae cuando ordenó a la Unidad de Trabajo Social del tribunal llevar a cabo una amplia investigación forense sobre la viabilidad de la custodia compartida. Señaló que la perito del TPI realizó una extensa y rigurosa investigación que incluyó las entrevistas a las partes y colaterales, el historial biopsicosocial de las partes recopilado durante entrevistas, observaciones, visita a la escuela y la residencia del peticionario y la recurrida. Incluso, examinó documentos, las regrabaciones de dos vistas de orden de protección y se entrevistó con la sicóloga que realizó las evaluaciones. Adujo que el peticionario no aportó prueba de que las actuaciones del TPI fueron productos de la irreflexión, parcialidad, pasión, prejuicio o abuso de discreción. Mencionó que el récord refleja que al peticionario se le brindaron oportunidades para defenderse y que no se justifica intervenir con las

determinaciones del TPI. Expresó que los casos de familia no son cosa juzgada. Evaluamos.

El 10 de noviembre de 2022 la señora Carmen Santiago Rodríguez, abuela materna de las dos menores, presentó una petición de custodia y remedio provisional contra el padre de las niñas, el señor Maldonado Vargas. El 20 de diciembre de 2022 el Tribunal dictó una sentencia en la que le otorgó la custodia legal provisional de las menores a su abuela materna.

Posteriormente, el señor Maldonado Vargas compareció con su abogada de Pro-Bono a la vista de custodia pautada para el 15 de marzo de 2023. Ese día el foro primario ordenó un estudio de custodia y relaciones paterno filiares para "evaluar bajo 223 y/o relaciones filiales de no cualificar para la custodia compartida".[17] Tras otros trámites, culminado el Informe Social preliminar y las evaluaciones, el 6 de noviembre de 2023 el Tribunal les ordenó a las partes que en veinte (20) días mostraran causa por la cual no debía dictarse sentencia acogiendo las recomendaciones del informe. Advirtió que de no presentar oposición o informar que pretenderían impugnar el informe, dictaría sentencia acogiendo las recomendaciones. Ese término vencía el **27** de noviembre de 2023.

El 27 de noviembre de 2023, la señora Santiago Rodríguez presentó una *Moción en cumplimiento de orden,* no así el peticionario demandado. El 28 de noviembre de 2023 el TPI le concedió veinte (20) días a la parte demandada, para que expusiera su posición a lo que solicitó la demandante.[18] El término venció el lunes 18 de diciembre. No obstante, cuatro días después, el 22 de diciembre de 2023, peticionario presentó una

---

[17] Apéndice pág. 28.
[18] Apéndice pág. 89.

*Urgente moción informativa y anunciando la impugnación del informe social*.  En la moción indicó que impugnaría el informe social.  La representante legal del señor Maldonado Vargas explicó que confrontó problemas de salud, incluyendo el COVID, que la mantuvieron fuera de la oficina.  También informó que luego de realizar las gestiones con el Programa Pro-Bono la perito sería la Dra. Ileana Carrión Maldonado.  En moción aparte, presentada ese mismo día, incluyó el *curriculum vitae* del perito.

El Tribunal no aceptó la solicitud para impugnar el informe, pues el 2 de enero de 2024 emitió una orden en la cual decretó, "Ver orden del 6 de noviembre de 2023.  El Tribunal otorgó 20 días para ello y los mismos pasaron en exceso."[19] Consecuentemente el 9 de enero siguiente determinó acoger el informe social con las recomendaciones.

Insatisfecho, el peticionario solicitó reconsideración.  Junto al escrito la abogada incluyó una prueba de laboratorio de COVID, una certificación médica del 4 de diciembre de 2023 y la autorización del programa de Pro-Bono, emitida el 21 de diciembre de 2023 para la contratación del perito.  Aun así, el TPI denegó la reconsideración.

Sin duda el peticionario no respondió a la orden del 6 de noviembre, que venció el 27 de noviembre de 2023, ni a la orden del 28 de noviembre que venció el 18 de diciembre a los fines de expresarse en cuanto al Informe Social.  No obstante, contestó el 22 de diciembre de 2023 y allí su abogada expresó las razones de salud que no le permitieron cumplir con la orden del tribunal.  Explicó, además, las gestiones que realizó para contratar un perito bajo el programa de Pro-Bono e indicó el nombre del perito con el

---

[19] Apéndice pág. 114.

*curriculum vitae*.    Luego, en la moción de reconsideración presentada el 17 de enero de 2024, dentro de los 15 días de emitidas las ordenes impugnadas, el peticionario estableció de forma más concreta y particular la situación de salud que enfrentó su abogada que le impidió presentar a tiempo su reacción al informe.    En su escrito acompañó la evidencia médica y las gestiones realizadas sobre lo que ocasionó el incumplimiento con la orden del Tribunal.  En este sentido, validamos que la solicitud de reconsideración cumplió las exigencias de la Regla 47 de Procedimiento Civil,[20] al ser presentada a tiempo y exponer con particularidad las razones por las cuales el foro primario debió reconsiderar sus órdenes.

Aun cuando es evidente que el peticionario no cumplió con las dos órdenes del tribunal, validamos como justa causa para ese incumplimiento las razones expresadas por la abogada en las mociones que presentó el 22 de diciembre y en la moción de reconsideración.  La enfermedad de un abogado constituye una justa causa cuando se acredita de forma fehaciente su ocurrencia, como aquí sucedió.

Si bien el foro primario realizó ciertas advertencias en su orden del 6 de noviembre, el hecho de denegar la solicitud del peticionario para presentar un perito para impugnar el informe, luego de que su abogada explicara las razones para incumplir, resultó ser una sanción drástica.  Mas aun cuando es norma reiterada que la adjudicación de un pleito sin ir a sus méritos, como un medio de sanción, es un último recurso al cual se debe

---

[20] La moción de reconsideración debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales. 32 LPRA Ap. V. R. 47.

recurrir solo después que otras sanciones han sido ineficaces y con previo apercibimiento.[21]

De otro lado, es norma reiterada que el proceso de privar de custodia a cualquiera de los progenitores conlleva claras consideraciones de debido proceso de ley. Una de estas es la oportunidad de contrainterrogar al perito de la Unidad Social que rindió el informe con la debida recomendación.[22]

En estas circunstancias, revocamos la decisión del foro primario de no aceptar como justa causa para el incumplimiento, la condición de salud de la abogada del peticionario, según orden del 2 de enero de 2024.  Se devuelve el asunto al foro primario para la continuación de los procedimientos.   Con lo aquí resuelto no estamos prejuzgando ni interviniendo en los méritos del informe social rendido.

### IV.

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y revocamos la *Resolución* recurrida.  Devolvemos el asunto al foro primario para la continuación de los procedimientos de forma cónsona a lo aquí expresado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] HRS Erase, Inc. v. CMT, Inc*.*, *supra*.
[22] Rentas Nieves v. Betancourt, *supra.*