ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| RANFEL VÁZQUEZ TORRES<br><br>Parte Apelada<br><br><br>v.<br><br><br><br>SHERLY RÍOS VICENS<br><br>Parte Apelante | TA2025CE00179 | *Certiorari, acogido como Apelación*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D DI2015-1849<br><br>Sala: 4002<br><br>Sobre:<br>Divorcio – Ruptura Irreparable |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de agosto de 2025.

Compareció ante este Tribunal la parte apelante, la Sra. Sherly Ríos Vicens (en adelante, "señora Ríos Vicens" o la "Apelante"), mediante recurso de *Certiorari* presentado el 21 de julio de 2025. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 17 de junio de 2025 y notificada y archivada en autos el 20 del mismo mes y año. Mediante el referido dictamen, el TPI otorgó la custodia del menor NRVR a la parte apelada, el Sr. Ranfel Vázquez Torres (en adelante, "señor Vázquez Torres" o el "Apelado"), y ordenó el traslado del pleito a la jurisdicción de Ponce para atender cualquier trámite posterior.

Debido a que se acude ante este foro para impugnar un dictamen relacionado con la custodia de un menor de edad, acogemos el presente recurso como una apelación, pero mantenemos el alfanumérico asignado por la Secretaria de este Tribunal.[1]

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen apelado.

---

[1] Figueroa v. Del Rosario, 147 DPR 121, 128 (1998).

**I.**

Los hechos en este caso se remontan al 30 de octubre de 2015, cuando el señor Vázquez Torres presentó una "**Demanda**" de divorcio por ruptura irreparable contra la señora Ríos Vicens. En la misma indicó, en lo pertinente, que las partes tenían dos (2) hijos menores de edad en común, denominados como: DVVR y NRVR. El 5 de febrero de 2016, el TPI dictó una "**Sentencia**" en la cual decretó el divorcio y dispuso que la Apelante retendría la custodia de ambos menores, mientras que la patria potestad sería compartida.

Posteriormente, el 30 de octubre de 2023, el señor Vázquez Torres solicitó una orden de protección a favor de la menor DVVR, al amparo de la Ley Núm. 57-2023, según enmendada, conocida como la "Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de Menores", 8 LPRA sec. 1641 *et seq.* En esta, alegó que la menor fue expuesta a situaciones de violencia doméstica. Consecuentemente, el TPI adjudicó la custodia provisional de la menor al señor Vázquez Torres y concedió una *Orden de Protección* vigente desde el 30 de octubre de 2023 hasta el 17 de noviembre de 2023.

Luego, el Apelado solicitó la custodia de ambos menores alegando que sufrían maltrato físico, negligencia y que carecían de supervisión por parte de la madre. Posteriormente, las partes arribaron a una estipulación sobre la custodia de los menores y las relaciones filiales. Así las cosas, el foro de instancia acogió dichos acuerdos y emitió una *Resolución* el 8 de noviembre de 2023. Cónsono a ello, se dispuso que el señor Vázquez Torres tendría la custodia exclusiva de la menor DVVR. Sobre la custodia del menor NRVR, se refirió a la Unidad Social del foro apelado para que emitiera el informe y las recomendaciones correspondientes.

A esos efectos, el 5 de febrero de 2024, la trabajadora social Gyleam Vega Nieves (en adelante, "TS Vega Nieves") informó sobre el plan de trabajo, los asuntos pendientes, las visitas, entrevistas y evaluaciones realizadas. Por su parte, el Apelado presentó una "**Urgentísima Moción**

**sobre Custodia Inmediata y de Emergencia por Seguridad del Menor NRVR**" en la que indicó que el menor y la Apelante se encontraban en un albergue de protección a víctimas, como consecuencia de una amenaza de muerte por parte de la expareja de la señora Ríos Vicens. Mediante la misma, el señor Vázquez Torres argumentó que era el recurso idóneo para retener la custodia de ambos menores.

De conformidad a lo requerido por el TPI, la TS Vega Nieves –según los hallazgos y resultados de las evaluaciones realizadas– recomendó que el Apelado mantuviera la custodia provisional del menor NRVR. Por su parte, la señora Ríos Vicens aceptó que el menor se encontraba junto a esta en el albergue de protección a víctimas. Así pues, el 22 de mayo de 2024, el foro *a quo* celebró una vista en la que, luego de evaluar los distintos testimonios, concluyó que la Apelante actuó en protección de su hijo y procuró el mejor bienestar del menor. Por tanto, determinó que la custodia del menor se mantuviera con la Apelante hasta tanto la Unidad Social rindiera su informe.

Luego de varios trámites procesales referentes a las relaciones paternofiliales, el 27 de junio de 2024, la TS Vega Nieves sometió el "**Informe Social Forense sobre Custodia**". Más tarde, sometió un "**Informe Social Forense Enmendado sobre Custodia**" (en adelante, *Informe Social Enmendado*). En atención a ello, el 7 de agosto de 2024, el TPI celebró una vista para la discusión del *Informe Social Enmendado*. En lo pertinente, la señora Ríos Vicens expresó su intención de impugnar el informe y las evaluaciones psicológicas y psiquiátricas llevadas a cabo. Así pues, el caso quedó sometido y el TPI se reservó la determinación. De igual forma, emitió una *Orden* en la cual concedió la custodia provisional del menor al señor Vázquez Torres y mantuvo la patria potestad compartida.

Posteriormente, ambas partes presentaron varias controversias ante el foro de instancia, los cuales fueron atendidos en su fondo y se les confirió a ambas la oportunidad de presentar su prueba y contrainterrogar la misma. Entre estos figuró, un suceso en el que la Apelante, sin justificación o fundamento alguno, llevó al menor NRVR a un hospital psiquiátrico, con la

intención de que este último no asistiera a la escuela para "lograr artificialmente, y en el peor beneficio o interés del menor, obtener la custodia".[2] Así las cosas, el 18 de noviembre de 2024, el TPI celebró una vista en la que testificó el Dr. Andrés Miguel Santaella, galeno del San Juan Children's Hospital, la Dra. Sol León, directora escolar de Caribean School, y el señor Carlos Caraballo, consejero escolar de dicha institución. A la luz de la prueba evaluada y aquilatada, el foro apelado emitió una *Resolución* en la que reiteró su determinación sobre que el señor Vázquez Torres debía mantener la custodia provisional del menor.

El 9 de enero de 2025, el TPI celebró una vista urgente dado a que la señora Ríos Vicens se negó a hacer entrega del menor al Apelado. Luego de escuchar a las partes, la juzgadora de instancia emitió una *Orden* en la que requirió la entrega del menor y reiteró su determinación de mantener la custodia provisional del menor en el Apelado. Debido a unas alegaciones presentadas por la Apelante, el TPI evaluó el "**Informe de Labor Realizada**" y el testimonio de la trabajadora social Cristina Meléndez Marín (en adelante, "TS Meléndez Marín"). El mismo consistió en que el menor no presentaba indicios de peligro o riesgo bajo la custodia del Apelado. Por su parte, la trabajadora social del Departamento de la Familia, Sra. Elizabeth Figueroa Troche (en adelante, TS Figueroa Troche), concluyó que el señor Vázquez Torres no incurrió en negligencia y no recomendó que se expidiera una orden de protección solicitada por la Apelante y que se determinó que eran infundadas. De este modo, el TPI dictó una *Resolución* el 15 de abril de 2025, en la que reafirmó que la custodia provisional la mantenía el señor Vázquez Torres.

El 14 de abril de 2025, el TPI celebró una vista para discutir el informe de manejo del caso. Sin embargo, se informó que las partes podrían llegar a un posible acuerdo, en atención a lo cual éstos solicitaron un término adicional. A pesar de ello, las partes no alcanzaron un acuerdo, por lo que el foro de instancia mantuvo la vista de impugnación del *Informe Social Enmendado* y señaló una vista urgente para el 29 de abril de 2025.

---

[2] *Véase*, Apéndice Núm. 2 del recurso, pág. 9.

Llegado el día, se llevó a cabo la vista en la que testificó la Dra. Jelisse Matos Rentas, psicóloga del menor NRVR. Del testimonio vertido surgió que no existían indicadores de maltrato o negligencia y que el ajuste del menor al vivir bajo la custodia del señor Vázquez Torres era el esperado para un menor de su edad. Finalmente, el 5 de mayo de 2025, el TPI celebró una vista en la que las partes presentaron los asuntos que estaban pendientes de adjudicación. Al evaluar las controversias presentadas en el "**Informe de Conferencia Preliminar entre Abogados**" para impugnar el *Informe Social* Enmendado, el foro *a quo* se percató que las mismas consistían en un ataque colateral a la determinación que dio paso a adjudicar la custodia del menor al Apelado y que fue resuelto desde el 7 de agosto de 2024. Así pues, el TPI concluyó que la Apelante tuvo varias oportunidades para recurrir de las determinaciones de custodia provisional y no lo hizo. Resaltó los distintos incidentes atendidos con carácter de urgencia en los que se evaluó la idoneidad del Apelado como custodio del menor. Más aún, señaló los testimonios de distintos facultativos médicos y profesionales del campo del trabajo social, quienes reafirmaron que el mejor bienestar del menor era con el señor Vázquez Torres. Siendo así, la juzgadora de instancia consideró que tenía todos los elementos suficientes para adjudicar la custodia del menor y determinó adjudicarle la misma al Apelado. Conforme a su decreto, y en consideración de que el señor Vázquez Torres, así como los menores, residían en el municipio de Ponce, trasladó el asunto a esa jurisdicción para cualquier trámite posterior.

En desacuerdo con la determinación del TPI, la Apelante presentó el recurso que nos ocupa, mediante el cual le imputó la comisión de los siguientes errores:

> **1. Erró el Tribunal de Primera Instancia al emitir una Orden de traslado a sabiendas que solo faltaba la vista de impugnación.**
>
> **2. Erró el Tribunal de Primera Instancia al no celebrar una vista de impugnación de informe social y pretender sustituirlas por vistas interlocutorias solicitadas en su mayoría por el Sr. Vázquez denotando prejuicio y parcialidad. Además, en violación al debido proceso de ley que le asiste a la compareciente.**

El 1 de agosto de 2025, el Apelado presentó su "**Moción de Desestimación por Falta de Jurisdicción y en Oposición a Expedición de *Certiorari*"**.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma conocida que los casos de familia están permeados del más alto interés público y que los mismos están dotados de un carácter *sui generis*. Figueroa v. Del Rosario, 147 DPR 121, 128 (1998). El Tribunal Supremo de Puerto Rico ha afirmado que, de conformidad con las prerrogativas que derivan del poder de *parens patriae* del Estado, el tribunal ostenta amplias facultades para ejecutar las medidas que estime necesarias para proteger al menor. Jusino González v. Norat Santiago, 211 DPR 855, 865 (2023). Por ello, los tribunales deben, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor. Peña v. Peña, 164 DPR 949, 958 (2005). A esos efectos, ante una determinación sobre custodia, los foros judiciales estamos llamados a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración. Jusino González v. Norat Santiago, *supra*, pág. 864; Ortiz v. Meléndez, 164 DPR 16, 26-27 (2005).

Al respecto, el Artículo 604 del Código Civil establece los siguientes criterios a considerar en la adjudicación de custodia:

(1) La salud mental de ambos progenitores y de los hijos;

(2) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;

(3) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;

(4) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;

(5) el historial de cada progenitor en la relación con sus hijos;

(6) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;

(7) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;

(8) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;

(9) la razón o los motivos de los progenitores para solicitar la custodia compartida;

(10) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;

(11) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;

(12) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y

(13) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos. 31 LPRA sec. 7283.

Cónsono con lo anterior, la Ley Núm. 223-2011, según enmendada, conocida como la "Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia", dispone en su Artículo 7 que, al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores, el tribunal referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con sus recomendaciones. 32 LPRA sec. 3185. Tanto la recomendación del trabajador social, como la determinación de custodia del Tribunal tendrán como propósito garantizar el mejor bienestar del menor. 32 LPRA sec. 3186. Por último, resulta importante resaltar que las determinaciones de custodia no constituyen cosa juzgada, toda vez que éstas están sujetas a la revisión judicial si existe un cambio en las circunstancias que así lo justifiquen. Figueroa v. Del Rosario, *supra*. La determinación que emite el foro para resolver la modificación de la custodia, por cambios en las circunstancias, implica una adjudicación en los méritos y, como tal, constituyen una nueva sentencia de la cual puede apelarse. Íd.

**B.**

Es principio reiterado en nuestro ordenamiento jurídico la deferencia que los foros apelativos debemos conferir a la apreciación de la prueba testifical que realiza el juzgador o la juzgadora de hechos. SLG Rivera-Pérez v. SLG Díaz-Doe et al., 207 DPR 636, 657 (2021). Como regla general, un

tribunal apelativo no intervendrá con las determinaciones de hecho o la adjudicación de la credibilidad, salvo que se demuestre que dicho foro incurrió en pasión, prejuicio, parcialidad o error manifiesto. Íd., pág. 658. Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de Primera Instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos. Dávila Nieves v. Meléndez Marín,187 DPR 750, 777 (2013). En cambio, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal. Méndez v. Morales, 142 DPR 26, 36 (1996). Se incurre en un error manifiesto cuando la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble.

**III.**

En el presente caso, la Apelante solicitó la revocación de la *Resolución* mediante la cual se otorgó la custodia del menor NRVR al Apelado. En consecuencia, el caso se trasladó a la jurisdicción de Ponce, toda vez que los menores residen en dicho municipio junto a su padre. La señora Rivera Vicens aduce, en síntesis, que el TPI erró al trasladar el caso habiendo una vista de impugnación del *Informe Social Enmendado* pendiente. Adelantamos que no le asiste la razón. Veamos.

Conforme hemos discutido anteriormente, la determinación de custodia que deben efectuar los foros judiciales debe estar precedida de un informe social junto con una serie de recomendaciones que el Tribunal deberá evaluar, a la luz de las particularidades de cada caso. Claro está, el crisol bajo el cual deben estar cimentada la misma siempre lo es el mejor bienestar del menor. Sobre este particular, debemos enfatizar que el trabajador social entendió que el mejor bienestar del menor se hallaba con su padre, aquí Apelado.

Del legajo apelativo ante nuestra consideración, se desprenden distintos incidentes en los cuales el TPI evaluó la idoneidad o el cuidado del

menor bajo la custodia del señor Vázquez Torres en múltiples ocasiones. Dichas determinaciones estuvieron fundamentadas en amplia evidencia testifical y documental que, con el pasar del tiempo, apuntaba a la misma conclusión, a saber: que la custodia del menor debía permanecer con el Apelado. Resulta importante señalar que en las audiencias celebradas se evaluaron los testimonios de las partes, de distintos facultativos médicos, tales como doctores y psicólogos, al igual que de las trabajadoras sociales. Todos y cada uno de éstos arribaron a la misma conclusión a la que llegó el foro de instancia en la *Resolución* que ante nos impugna la Apelante. Entiéndase, el tribunal analizó en diferentes circunstancias, y ante varios incidentes reportados, la capacidad del Apelado para ostentar la custodia del menor NRVR. Un breve análisis de la *Resolución* apelada detalla aproximadamente cuatro (4) instancias en las que el foro de instancia emitió una determinación sobre la custodia provisional del menor. A saber:

1. El 7 de agosto de 2024, el TPI recibió el testimonio de ambas partes. Además, evaluó las recomendaciones del *Informe Social Enmendado*, así como el testimonio de la TS Vega Nieves. En esta misma fecha, el TPI emitió una *Orden* en la que concedió la custodia provisional del menor al señor Vázquez Torres. Este dictamen no fue recurrido.

2. El 18 de noviembre de 2024, el TPI escuchó el testimonio del Dr. Andrés Miguel Santaella, quien atendió al menor en el San Juan Children's Hospital. También se vertió el testimonio de la directora y el consejero escolar quienes indicaron que la Apelante no cumple con los reglamentos del colegio. Además, evaluó nuevamente los testimonios de las partes. Ese mismo día, el TPI emitió una *Resolución* en la cual sostuvo el mismo estado de derecho. Entiéndase, el menor permaneció bajo la custodia provisional del señor Vázquez Torres. Las partes tampoco recurrieron de este dictamen.

3. El 9 de enero de 2025, el TPI nuevamente escuchó los testimonios de las partes. Ante alegaciones promovidas por la Apelante, el TPI refirió el caso a la Unidad Social para que rindieran un *Informe Social de Labor*. Al igual que en ocasiones anteriores, mantuvo al menor bajo la custodia provisional del señor Vázquez Torres. Las partes no recurrieron esta determinación.

4. Finalmente, en la *Resolución* dictada el 15 de abril de 2025, el TPI mantuvo el mismo estado de derecho. Ello tras escuchar el testimonio de la TS Meléndez Marín, el 19 de enero de 2025. Además, el 19 de febrero de 2025, el TPI recibió copia del informe realizado por la TS Figueroa Troche. Del mismo modo, el 27 de marzo de 2025, recibió el *Informe de Labor Realizada* suscrito por la TS Meléndez Marín. A tales efectos, el 2 de abril de 2025, el TPI celebró una vista para la discusión de este. En esta misma vista, testificó la TS Meléndez Marín la cual habló sobre la encomienda realizada y las comunicaciones llevadas

a cabo con la TS Figueroa Troche. Este dictamen no fue recurrido.[3]

En cada una de estas instancias su conclusión, al igual que las recomendaciones y evaluaciones de los profesionales, ha sido que el señor Vázquez Torres mantuviera la custodia del menor NRVR. De igual forma, se destaca de los autos que ninguna de éstas fue recurrida por ninguna de las partes ante este Tribunal y que las controversias sobre custodia que se pretendían adjudicar ya habían sido resueltas y reiteradas por el foro apelado. A esos efectos, no nos queda más que coincidir con la apreciación de la juzgadora de instancia.

Ante nos, la Apelante intenta establecer que el TPI no llevó a cabo la vista de impugnación del *Informe Forense Enmendado* pautado para las fechas 5, 6, y 7 de mayo de 2025. Sin embargo, de la *Resolución* surge que el 5 de mayo de 2025, se llevó a cabo una vista en la cual, una vez evaluadas las controversias plasmadas en el "**Informe de Conferencia Preliminar entre Abogados**", el TPI concluyó que esta impugnación consistía en un ataque colateral a la determinación de custodia que efectuó dicho foro desde el 7 de agosto de 2024 y continuó reiterándose por espacio de casi un año. Por su parte, el Apelado entiende que la Apelante no colocó a este Tribunal en posición para adjudicar esta controversia, toda vez que el apéndice del recurso se limitó a presentar la *Resolución* recurrida. Coincidimos con su apreciación.

En cuanto a ello, hemos enfatizado en que las determinaciones del foro de instancia merecen gran deferencia. Tanto así que los tribunales apelativos estamos impedidos de intervenir, salvo que se demuestre que el TPI incurrió en pasión, parcialidad, prejuicio o error manifiesto. A poco que se analice el expediente ante nuestra consideración, es más que patente que no contamos con los elementos necesarios, ni la Apelante nos colocó en condiciones de revertir el dictamen impugnado en su recurso. Por tanto, ante estas circunstancias, estamos compelidos a sostener la *Resolución* apelada.

---

[3] *Véase*, Íd.

Por último, recalcamos que las determinaciones de custodia no constituyen cosa juzgada. Por lo que éstas pueden estar sujetas a la revisión judicial si ocurre un cambio en las circunstancias que así lo justifiquen.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte del presente dictamen, se *confirma* la *Resolución* apelada.

Lo acordó y manda el Tribunal, y lo certificada la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones