Voto particular disidente emitido por la
Juez Asociada Señora Rodríguez Rodríguez, al cual se unen el Juez Presidente Señor Hernández Denton, la Jueza Asociada Señora Fiol Matta y el Juez Asociado Señor Estrella Martínez.
Disiento del curso seguido por una mayoría de este Tribunal por entender que, nuevamente, queda rezagada la doctrina del mejor bienestar del menor. Además, al negar *419 nos a expedir actuaríamos contrario a lo expresado anteriormente en esta controversia.
HH
En el contexto de un pleito de divorcio, la Sra. Jossette Machargo Olivella y el Sr. Fernando Martínez Schmidt suscribieron una Estipulación de Custodia, Patria Potestad y Relaciones Paterno-Filiales sobre las dos hijas menores habidas en matrimonio.(1) Debido a dificultades en la implementación de las relaciones paterno-filiales, las partes acordaron que la Dra. Jeannette Rosselló, psicóloga y terapeuta de las menores,(2) fuera la encargada de dirigir las terapias conducentes a restablecer las relaciones entre el padre y las menores.(3)
En ocasión anterior, este Tribunal tuvo la oportunidad de evaluar la solicitud del padre de la menor para que removieran a la doctora Rosselló de su función como terapeuta encargada de conducir las terapias para restablecer las relaciones entre el padre y las menores. Véase Apéndice de la Petición de certiorari en el caso CC-2011-0193, págs. 289-302. En aquel entonces, el Tribunal de Apelaciones había confirmado la determinación del Tribunal de Primera Instancia de remover a la doctora Rosselló como terapeuta de las menores por entender, sin más, que el padre había perdido la confianza en la doctora. A tales efectos, este Tribunal modificó la determinación del foro apelativo intermedio y determinó que, al remover a la doctora Rosselló, no se consideraron los posibles efectos adversos que el cambio de terapeuta podría tener en las menores.
Por tal razón, ordenamos la celebración de una vista para que se dilucidaran los posibles efectos del cambio de *420 terapeuta. La vista fue señalada para el 24 de octubre de 2011. No obstante, las partes optaron por estipular que la trabajadora social Silvia Burgos fuese la persona a cargo del proceso de reanudación de las relaciones paternofiliales. Ante la indisponibilidad de la señora Burgos, y en ausencia de un acuerdo entre las partes, el 30 de noviembre de 2011, el foro primario designó al trabajador social Jari R. Moreno Sánchez para que éste se encargara del proceso de reanudar de las relaciones paterno-filiales. Las partes estipularon que el señor Moreno Sánchez trabajaría en coordinación con la doctora Rosselló y la Procuradora de Asuntos de la Familia. Sin embargo, se acordó que en lo sucesivo la doctora Rosselló sólo atendería a las menores. Es decir, ésta no estaría a cargo del proceso de restablecer las relaciones paterno-filiales.
Luego de las primeras dos citas terapéuticas con las menores, el 13 de enero de 2012, el señor Moreno Sánchez suscribió un informe en el que detalló el distanciamiento de las menores con la figura paterna. (4) Debido a la negativa de las menores en relacionarse con su padre, el 16 de abril de 2012, el señor Moreno Sánchez y la doctora Rosselló presentaron un informe conjunto en el que recomendaron que se detuviera el proceso de reanudación de las relaciones paterno-filiales. Fundamentaron su recomendación en los graves problemas de comunicación entre el padre y la madre de las menores, y el efecto de esta relación negativa en las menores. Contrario a la recomendación suscrita en el informe conjunto, el 1 de mayo de 2012, el foro primario celebró una vista en la que ordenó a las partes que entablaran un diálogo para hacer viable las relaciones *421 paterno-filiales. Además, advirtió que de no lograrse un acuerdo se reanudarían las relaciones paterno-filiales supervisadas por la trabajadora social del tribunal.
El Tribunal de Primera Instancia citó a las partes a una vista a celebrarse el 15 de junio de 2012. El día de la vista, el tribunal, súbitamente, se trasladó y constituyó en el área del comedor del centro comercial de San Patricio Plaza para evaluar la interacción de las menores con sus progenitores. Nuevamente, las menores presentaron renuencia a relacionarse con su padre.(5) Luego de la vista, el 2 de julio de 2012, el foro primario emitió una resolución en la que, entre otras cosas, resolvió lo siguiente:
Por entender que el extenso proceso terapéutico con la Dra. Jeannette Ros [s] ello se ha detenido y tornado inefectivo, y que al presente la relación del padre con las menores se ha deteriorado en lugar de progresar, ordenamos el cese de intervenciones de las menores con dicha terapeuta. Disponemos [,] además, el cese de toda intervención pericial, ya sea evaluativa o terapéutica, con las menores, así como el proceso de reanudación de relaciones paterno-filiales en este momento y hasta tanto otra cosa disponga este Tribunal. (Énfasis suprimido). Véase Apéndice de la Petición de certiorari, pág. 132.
La señora Machargo Olivella solicitó reconsideración, la cual fue declarada “sin lugar” por el foro primario. Inconforme, acudió ante el Tribunal de Apelaciones y alegó, en lo pertinente, que erró el foro primario por privar arbitrariamente a las niñas de continuar recibiendo las terapias con la doctora Rosselló. Mediante Resolución de 25 de octubre de 2012, el foro apelativo intermedio confirmó la determinación del Tribunal de Primera Instancia. Insatisfecha, la señora Machargo Olivella acude ante nuestra consideración mediante Petición de certiorari.
*422 f—I h—I
En nuestro ordenamiento jurídico, la institución de las relaciones paterno-filiales está revestida de un alto interés público y social. Rexach v. Ramírez, 162 DPR 130 (2004). Corolario del poder de parens patriae, el Estado deba velar por que dentro de esta relación cada menor se desarrolle en un entorno adecuado. Pena v. Pena, 164 DPR 949 (2005). Si bien el derecho de un padre o de una madre a relacionarse con el menor es de alta jerarquía, este derecho cede ante la facultad parens patriae con la cual se inviste al Estado. Id., pág. 959.
El Estado no debe ejercer tal facultad en el vacío o fundamentado en concepciones filosóficas sobre cuál es el bienestar óptimo de un menor en el abstracto. Al contrario, cada controversia se debe mirar atendiendo las particularidades y los hechos materiales que le rodean para determinar, conforme a los hechos, cuál es el mejor bienestar del menor. Particularmente, cuando el proceso de las relaciones paterno-filiales usualmente se enmarca en una relación emocionalmente conflictiva entre los progenitores. Dentro de este contexto, debe mirarse con detalle el posible efecto de nuestras determinaciones en la cotidianidad de los menores.
La controversia ante nuestra consideración es simple: si procede la remoción de la doctora Rosselló como terapeuta de las menores por ésta no haber sido efectiva en el restablecimiento de las relaciones paterno-filiales. Para fundamentar esta determinación, el foro primario repasó aritméticamente la cantidad de visitas de las menores a la oficina de la doctora Rosselló. Ante el cuantioso número de visitas y la falta de un progreso en el restablecimiento de las relaciones paterno-filiales, el tribunal concluyó que las terapias con la doctora Rosselló se habían tornado ineficaces.
Disiento del proceder seguido por el foro primario y avalado por una mayoría de este Tribunal. El tribunal sentenciador abusó de su discreción al no considerar los posibles *423 efectos adversos de remover a la doctora Rosselló con quien, por los pasados cuatro años, las menores han desarrollado lazos de afecto y confianza. Máxime cuando del expediente del caso surge que la doctora Rosselló no estaba a cargo de dirigir las terapias conducentes al restablecimiento de las relaciones paterno-filiales. Además, aun considerando que la doctora estuviese a cargo de las terapias conducentes al restablecimiento de las relaciones paternofiliales, el derecho del padre a relacionarse con las menores se debe evaluar en relación con el mejor bienestar de éstas. Recordemos que “cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor se debe resolver a favor del menor”. Ortiz v. Meléndez, 164 DPR 16, 28 (2005).
Anteriormente, en ocasión de evaluar la petición del señor Martínez Schmidt de que se removiera a la doctora Rosselló como terapeuta de las menores, señalamos que:
No nos parece razonable [...] que tal determinación se haga sin antes considerar el posible efecto adverso que podría tener dicho cambio en el bienestar de las menores en este caso, sobre todo cuando existen alegaciones de que la Dra. Ros [s] ello goza de la confianza de las menores.
Entendemos que un cambio de terapeuta como el solicitado por el señor Martínez Schmidt debe ordenarse sólo si las circunstancias lo ameritan. [L]o deseable es minimizar cualquier efecto perjudicial que los cambios en el proceso terapéutico puedan tener sobre las menores. Véase Apéndice de la Petición de certiorari en el caso CC-2011-0193, págs. 299-300.
A su vez, señalamos que:
[E]l tribunal debe tomar en cuenta, entre otras cosas: las razones por las cuales el proceso terapéutico está detenido; el grado de la cooperación de las partes; las oportunidades que ha tenido la terapeuta para llevar a cabo su encomienda; y el nivel de comodidad que sienten las menores respecto al proceso. íd., pág. 300.
Entendemos que el foro primario, en su determinación, hizo caso omiso a nuestros pronunciamientos anteriores. Ante tales circunstancias, no vemos por qué hemos de va *424 nar los fundamentos en nuestra expresión anterior y resolver contrario a los mismos.
I—i 1—1 H-i
Por todo lo anterior, expediría el recurso de certiorari y modificaría la resolución del Tribunal de Apelaciones para que, conforme a nuestros pronunciamientos anteriores, se celebre una vista en la que se diluciden los posibles efectos adversos de remover a la doctora Rosselló como terapeuta de las menores.

 Las partes se divorciaron el 30 de enero de 2009 por la causal de separación.

 La doctora Kosselló ha sido la psicóloga de las menores por más de cuatro años y desde antes del pleito de divorcio.

 Las terapias iban dirigidas a atender la renuencia de las menores en relacionarse con su padre.

 En las terapias, el señor Moreno Sánchez evaluó el comportamiento y la relación de las menores con su padre. Según el informe suscrito por el señor Moreno Sánchez, en la primera terapia las niñas mostraron apego a su madre pero, luego de ésta salir de la sala de terapia, las niñas poco a poco se relacionaron más abiertamente con su padre. No obstante, al finalizar la sesión de terapia, las niñas se mostraron calladas y distantes de su padre. En la segunda cita de terapia, las niñas se negaron a bajarse del carro de su madre.

 Las menores, tan pronto vieron a su padre en el centro comercial, se aferraron a su madre, comenzaron a llorar y resistieron acercarse a su padre. Véase Apéndice de la Petición de certiorari, pág. 123.