ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **DEPARTAMENTO DE LA FAMILIA**<br><br>Apelado<br><br>v.<br><br>**JOSÉ FRANCISCO AUDAIN RODRÍGUEZ y YELIANIS RÍOS PLAZA**<br><br>Apelante | TA2026AP00160 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm.:<br>**AR2025MM00034**<br><br>Sobre: Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de abril de 2026.

Comparecen ante nos el señor José Francisco Audain Rodríguez (señor Audain Rodríguez) y la señora Yelianis Ríos Plaza (señora Ríos Plaza) (en conjunto, apelantes) y solicitan la revocación de la *Sentencia* emitida el 19 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, TPI). Mediante la decisión apelada, el TPI ratificó la remoción de emergencia de dos menores solicitada por el Departamento de la Familia (DF o apelado).

Por los fundamentos que se expondrán a continuación, se confirma la *Sentencia* apelada.

### I.

Surge del expediente que, el 6 de noviembre de 2025, el DF presentó una *Petición de Emergencia sobre Remoción y Custodia de Menores*. Alegó que asumió la custodia de emergencia sobre los

menores LYMR, de 4 años, y LVAR, de 1 año, y los ubicó provisionalmente con sus abuelos maternos. Arguyó que los menores residían en una urbanización en Barceloneta donde la policía, al diligenciar un allanamiento en el lugar, ocupó material delictivo, tales como sustancias controladas y armas. Argumentó que, por su corta edad, los menores eran incapaces de defenderse por sí mismos, que las condiciones de la residencia suponían un riesgo para su seguridad y que los encargados de los niños no contaban con la capacidad para reconocer o amedrentar los riesgos a los cuales los exponían. Por ello, peticionó, entre otras cosas, que se le otorgara la custodia provisional de los menores porque era innecesario agotar los esfuerzos razonables antes de la remoción por el riesgo dentro del cual se encontraban los niños.

En la misma fecha, el foro apelado emitió una *Resolución y Orden de Remoción y Custodia de Emergencia*. Mediante esta, determinó que: (1) existía causa justificada para entender que se trataba de una emergencia que ameritaba la remoción inmediata de los menores, de acuerdo con el testimonio de la trabajadora social, la señora Iris Y. Cruz Vázquez (en adelante, señora Cruz Vázquez o trabajadora social); (2) la seguridad de los niños se vio vulnerada y mantenerlos en el hogar suponía un peligro, y (3) los menores se situaban en condiciones que amenazaban su seguridad, bienestar y salud. Por ello, dictaminó que no era necesario agotar los esfuerzos razonables para preservar la unidad familiar, al encontrarse en un contexto que ameritaba acción inmediata.

El 12 de noviembre de 2025, el foro apelado dictó una *Orden* mediante la cual transfirió la vista de ratificación para el 3 de diciembre de 2025. Asimismo, y en igual fecha, la señora Cruz Vázquez presentó su *Informe Social Confidencial para la Vista de Ratificación de Remoción de Custodia*. Mediante este escrito, la trabajadora social comunicó que fue asignada a intervenir en el caso

y se personó al barrio Catañito en Barceloneta, donde fue recibida por el teniente Rivera, 6-31920, quien habría solicitado la participación del DF tras la presencia de menores durante la ejecución de la orden de allanamiento número 764080-22-0013. Precisó que el teniente Rivera le expresó que se realizó un allanamiento en tres apartamentos ubicados en una estructura. Explicó que el teniente le precisó que, en el apartamento donde residían la señora Ríos Plaza, el señor Audain Rodríguez y los menores, ocuparon dinero en efectivo, parafernalia y sustancias controladas; además, exteriorizó que el agente del orden público le dijo que el señor Audain Rodríguez fue arrestado por posesión de un vehículo hurtado. Basado en esto, y por entender que existía una situación de riesgo sustancial, removió a los menores del lugar y recomendó que se celebrara una vista de ratificación.

La audiencia de ratificación se llevó a cabo el 18 de diciembre de 2025. Mediante esta, el TPI ratificó la remoción de los menores tras haber escuchado el testimonio de la trabajadora social. Según la *Minuta* de la vista aludida, la señora Cruz Vázquez testificó que las autoridades del orden público le dejaron saber que ocuparon material delictivo que ya habían retirado del lugar. Dijo, además, que determinó cuál de los apartamentos constituía la residencia de los menores al encontrar documentos de identificación pertenecientes a la señora Ríos Plaza y el señor Audain Rodríguez en uno de ellos. Asimismo, la trabajadora social notó que, aunque la estructura tenía dos habitaciones, solo una de ellas estaba habilitada para dormir, por lo cual infirió que todos dormían juntos. La señora Cruz Vázquez mencionó que la señora Ríos Plaza y el señor Audain Rodríguez fueron poco cooperadores durante su intervención, limitándose a proveer su información demográfica y datos sobre familiares colaterales. Por ello, la trabajadora social expresó que asumió la custodia de emergencia de los menores. Por

último, declaró que la señora Ríos Plaza no tenía referidos previos y que a ella y al señor Audain Rodríguez no se le habían radicado cargos criminales relacionados con el allanamiento realizado en su apartamento.

Consecuentemente, el TPI emitió *Sentencia* el 19 de diciembre de 2025. Mediante esta, ratificó la remoción de los menores y le otorgó la custodia provisional de estos al DF; así, estos permanecerían bajo la guardia de sus abuelos maternos. Específicamente, el foro primario determinó que: (1) procedía admitir el informe preparado por la trabajadora social; (2) al momento de la remoción, existía una circunstancia de peligrosidad que vulneraba la seguridad de los menores, y por la cual se justificaba la carencia de esfuerzos razonables para evitar la remoción y preservar la unidad familiar; (3) la remoción respondió al interés óptimo de los menores; (4) la custodia provisional de los menores le corresponde al DF, quienes luego serían ubicados con sus abuelos maternos, y (5) el DF debía presentar un plan de servicio cuanto antes, y estaba obligado a enviar copia de este a los representantes legales involucrados en el caso.

Insatisfechos, el 13 de febrero de 2026, la señora Ríos Plaza y el señor Audain Rodríguez acudieron ante este foro revisor mediante una Apelación, señalando la comisión de los siguientes errores:

> Erró el TPI al ordenar la remoción de los menores aun cuando la Trabajadora Social admitió que no corroboró la información que le proveyó el Teniente Rivera, no efectuó esfuerzos razonables para evitar la remoción y quedó demostrado que la señora Rios no era, ni tampoco es parte de ninguna investigación criminal y siempre manifestó su disponibilidad para relocalizarse junto con sus hijos a donde el Departamento de la Familia le indicara para no perder a sus hijos.

> Erró el TPI al admitir en evidencia el Informe Social presentado por la Trabajadora Social a pesar de que el mismo nunca fue sometido por el Departamento de la Familia durante la presentación de su prueba; e incluso, el mismo fue entrado en evidencia sin testigos luego de que el caso fue sometido por el Departamento

de la Familia a pesar de la objeción oportuna presentada, ya que el caso estaba sometido.

Por su parte, el 12 de marzo de 2026, la Procuradora de la Familia (en adelante, Procuradora) compareció a través del Procurador General de Puerto Rico mediante su *Alegato en Oposición*.

Asimismo, el 30 de marzo de 2026, el DF compareció mediante su *Alegato en Oposición del Departamento de la Familia*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

Es sabido que, tanto las determinaciones de hechos, como la apreciación de la prueba, la adjudicación de credibilidad y el valor probatorio que le da el Tribunal de Primera Instancia a la evidencia presentada son merecedoras de gran deferencia. Su razón de ser estriba en que es el foro sentenciador el que ha tenido el beneficio de escuchar y observar el *demeanor* de los testigos. No obstante, dicho principio no es uno absoluto, toda vez que se ha establecido que cuando los foros apelativos percibimos la existencia de pasión, prejuicio, parcialidad o error manifiesto no estamos compelidos a guardar esta norma de abstención, por lo que bajo estas instancias poseemos autoridad para intervenir. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753 (2013); *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020). En otras palabras, solo podremos inmiscuirnos en las determinaciones de hecho cuando la apreciación de la prueba no represente el balance racional, justiciero y jurídico de la totalidad de la prueba. *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015); *Dávila Nieves v. Meléndez Marín*, supra, pág. 770-771 (2013); *González Hernández*

*v. González Hernández,* 181 DPR 746, 776-777 (2011); *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 986-987 (2010).

**B.**

La Ley Núm. 57-2023, conocida como la *Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de Menores* (en adelante, Ley Núm. 57-2023), se promulgó para viabilizar la política pública sobre que los menores tienen derecho a desarrollarse en un ambiente apropiado, conforme con las directrices vertidas en las partes B y E del Título IV de la Ley del Seguro Social, según enmendada por la *Family First Prevention Services Act,* 42 U.S.C. secs. 621-629m, 670-679c. 8 LPRA sec. 1642. Este estatuto enfatiza que el Estado conserva un interés apremiante para garantizar el desarrollo integral de los menores, por lo cual se fomenta esforzarse por preservar los vínculos familiares, si esto responde al interés óptimo del menor. *Íd.,* sec. 1771. Sobre esto, nuestro Más Alto Foro ha reseñado que "a[ú]n cuando el derecho de un progenitor a tener consigo a sus hijos es de superior jerarquía, este tiene que ceder ante la facultad de *parens patriae* del Estado de salvaguardar y proteger el bienestar del menor". *Pena v. Pena,* 164 DPR 949, 959 (2005). Por lo tanto, el Poder Judicial cuenta con discreciones amplias para accionar la aludida facultad. *Machargo Olivella v. Martínez Schmidt,* 188 DPR 404, 414 (2013).

El mejor interés del menor se define, según el inciso (cc) de la Ley Núm. 57-2023, *supra,* como:

> Conjunto de acciones y procesos tendentes a garantizarle a un menor su desarrollo integral y una vida digna, así como las condiciones materiales y afectivas que le permitan vivir plenamente y alcanzar su máximo potencial y desarrollo, incluyendo, pero sin limitarse a, factores que afecten su bienestar físico, mental, emocional, familiar, educativo, social, la salud y su seguridad. 8 LPRA sec. 1643.

Por ello, el precitado artículo esboza algunas conductas contrarias al mejor interés del menor, tales como el maltrato y la negligencia, los cuales la ley define como:

[…]

**Maltrato.** — Todo acto u omisión intencional en el que incurre el padre, la madre o persona responsable del menor de tal naturaleza que ocasione o ponga a este en riesgo de sufrir daño o perjuicio a su salud e integridad física, mental o emocional, incluyendo abuso sexual, o la trata humana según es definido en esta ley. También, se considerará maltrato el incurrir en conducta obscena o la utilización de un menor para ejecutar conducta obscena; permitir que otra persona ocasione o ponga en riesgo de sufrir daño o perjuicio a la salud e integridad física, mental o emocional de un menor; abandono voluntario de un menor; que el padre, madre o persona responsable del menor explote a este o permita que otro lo haga obligándolo o permitiéndole realizar cualquier acto, incluyendo, pero sin limitarse a, utilizar al menor para ejecutar conducta obscena, con el fin de lucrarse o de recibir algún otro beneficio; incurrir en conducta que, de procesarse por la vía criminal, constituiría delito contra la salud e integridad física, mental, emocional, incluyendo abuso sexual del menor o la trata humana. Asimismo, se considerará que un menor es víctima de maltrato si el padre, la madre o persona responsable del menor ha incurrido en la conducta descrita o ha incurrido en conducta constitutiva de violencia doméstica en presencia de los menores, según definido en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica".

[…]

**Negligencia.** —Tipo de maltrato que consiste en faltar a los deberes o dejar de ejercer las facultades de proveer adecuadamente los alimentos, ropa, albergue, educación o atención de salud a un menor; faltar al deber de supervisión; no visitar al menor o no haber mantenido contacto o comunicación frecuente con el menor. Asimismo, se considerará que un menor es víctima de negligencia si el padre, la madre o persona responsable del menor ha incurrido en la conducta descrita en los incisos (c) y (d) del Artículo 615 del Código Civil de Puerto Rico de 2020. *Íd.*

[…]

En situaciones como las mencionadas, la Ley Núm. 57-2023, *supra*, regula el procedimiento para obtener la custodia de emergencia de un menor que se encuentre en una situación que vulnere su seguridad. *Íd.*, sec. 1698. La intervención puede resultar en el otorgamiento de la custodia de emergencia al Departamento de

la Familia, lo cual obliga al Tribunal de Primera Instancia a celebrar una vista de ratificación de custodia. *Íd.*, sec. 1700. En esta audiencia, el tribunal evaluará si perduran o no la circunstancias que llevaron a la remoción del mejor; de subsistir la condición de peligrosidad, el foro judicial está facultado a dictar una sentencia que le conceda la custodia provisional al Departamento de la Familia. Durante el procedimiento, el ente administrativo podrá solicitar la exoneración de esfuerzos de reunificación, para lo cual habrá que llevarse a cabo vistas de relevo de esfuerzos junto con la audiencia de ratificación. *Íd.*, sec. 1710.

Así, cuando el tribunal determina que procede la remoción de los menores durante la vista de ratificación, se deberán celebrar audiencias de seguimiento para reevaluar el progreso del caso. *Íd.*, sec. 1702. En estas, se detallará el cumplimiento de la persona responsable del menor con el plan de servicios; si no se obedece el plan según establecido, esa audiencia se convertirá en una vista de relevo de esfuerzos razonables. *Íd.*

### III.

En su recurso, los apelantes arguyen que el foro primario incidió al ratificar la remoción de los menores y otorgar la custodia provisional de estos al DF, debido a que no se agotaron los esfuerzos razonables. Además, argumentaron que el informe social preparado por la trabajadora social era inadmisible porque no se admitió durante la presentación de la prueba en la vista de ratificación de la remoción.

Por su parte, la Procuradora, representada por la Oficina del Procurador General de Puerto Rico, alegó que la señora Ríos Plaza y el señor Audain Rodríguez no colocaron a este foro revisor en posición para determinar si la apreciación de la prueba del TPI durante la audiencia celebrada fue acertada o no porque no se

presentó la evidencia correspondiente. Además, enfatizó que el contenido del informe social fue discutido ampliamente y sujeto a contrainterrogatorio durante la audiencia de ratificación; por ello, el apelado plantea que este es admisible y que su admisión no violenta el debido proceso de ley de los apelantes.

Asimismo, el DF, mediante su representación legal, levantó argumentos similares a los de la Procuradora.

Tras un análisis ponderado del tracto procesal del caso, colegimos que no se cometieron los errores señalados por los apelantes. Por ello, confirmamos la *Sentencia* cuestionada.

Según reseñamos anteriormente, los tribunales apelativos, como norma general, no intervendremos con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el tribunal de instancia, salvo en situaciones en que este haya incurrido en pasión, prejuicio, parcialidad o error manifiesto. *Dávila Nieves v. Meléndez Marín, supra*, pág. 753 (2013); *Gómez Márquez et al. v. El Oriental, supra*, pág. 793 (2020).

Para poder analizar un planteamiento sobre la apreciación de la prueba, es necesario que la parte que impugna el criterio del foro primario nos coloque en posición para revisar la evidencia que este último tuvo ante sí. Para esto, nuestro Reglamento propone varios medios para la presentación de la prueba cuando esta es de naturaleza oral y, por ende, no estamos en la misma posición que el TPI para evaluarla, contrario a la evidencia documental. Por ello, resulta imperativo que la parte que cuestiona la apreciación de la prueba oral provea la evidencia necesaria para examinar el asunto.

En este caso, los apelantes no acompañaron una transcripción o regrabación de la vista de ratificación con su recurso. En la audiencia mencionada, la trabajadora social testificó sobre los pormenores de la remoción de emergencia de los menores

y el TPI le confirió credibilidad a su testimonio, lo cual resultó en el otorgamiento de la custodia provisional de los menores al DF, avalando la reubicación de los niños con sus abuelos maternos. No nos encontramos en la posición para intervenir con la discreción del foro primario, al no contar con alguna transcripción o regrabación de la audiencia de ratificación de la remoción de los menores.

En su segundo planteamiento de error, los apelantes razonan que el informe social preparado por la señora Cruz Vázquez era inadmisible por este no haberse presentado durante la vista de ratificación. Sin embargo, y como bien enfatiza el DF, la señora Ríos Plaza y el señor Audain Rodríguez tuvieron la oportunidad de contrainterrogar a la trabajadora social sobre lo acontecido durante la remoción y sobre el contenido del informe presentado el 12 de noviembre de 2025, fecha anterior a la vista. Como los apelantes tuvieron amplia oportunidad para contrainterrogar a la trabajadora social, colegimos que el foro primario no incidió al admitir el informe social. Asimismo, como tampoco estamos en posición para saber qué exactamente dijo la señora Cruz Vázquez, qué contiene precisamente el informe aludido y cómo estas cosas contrastan entre sí, acordamos no intervenir con la discreción del TPI sobre ello.

**IV.**

Por los fundamentos anteriormente esbozados, *confirmamos* la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria. El Juez Rodríguez Flores concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones